STELCO INDUSTRIES, INC. *v.* SHERMAN COHEN

COTTER, C. J., SPEZIALE, PETERS, HEALEY and PARSKEY, Js.

Argued November 13—decision released December 23, 1980

*Daniel Green,* for the appellant (plaintiff).

*William B. Lewis,* for the appellee (defendant).

PETERS, J.   This appeal arises out of a sale of building materials and supplies.   The plaintiff seller, Stelco Industries, Inc., sued the defendant buyer, Sherman Cohen, to recover the unpaid balance of the purchase price of goods delivered to and accepted by the defendant.   The defendant, by his answer, special defenses and counterclaim, put into issue the conformity of the goods and sought to recover damages incurred in their repair.   The trial court found the issues for the seller on its complaint in the amount of $5934.99 plus interest, and for the buyer on his counterclaim in the amount

of $4000. It therefore rendered a judgment in favor of the plaintiff for $1934.99 plus interest. The plaintiff has appealed.

Despite the brevity of the trial court's memorandum of decision, the basic facts about the underlying contract between the plaintiff and the defendant are reasonably clear. The buyer built a costly home in Greenwich for which the seller supplied much of the building materials. Before the present litigation, the buyer had already paid the seller some $63,000. The goods presently in dispute were properly billed in the amount of $5934.99. What was centrally in dispute was not the delivery of the goods, their acceptance or their price, but rather whether the goods were conforming goods or were defective.

The plaintiff raises four issues on this appeal. Did the trial court err: (1) in finding that the goods delivered by the plaintiff were defective? (2) in finding that the plaintiff had been notified that the goods were defective? (3) in finding that the defendant incurred reasonable repair costs of $4000? (4) in failing to award attorney's fees to the plaintiff?

Because the contract between the parties was a contract for the sale of goods, the law governing this transaction is to be found in article 2 of the Uniform Commercial Code. General Statutes § 42a-2-102. Under article 2, the rights and liabilities of the parties are determined, at least in part, by the extent to which the contract has been executed. The buyer's acceptance of goods, despite their alleged nonconformity, is a watershed. After acceptance, the buyer must pay for the goods at the contract rate; General Statutes § 42a-2-607 (1); and bears the burden of establishing their noncon-

formity. General Statutes § 42a-2-607 (4). Acceptance, even with knowledge of the nonconformity of the goods, does not, however, constitute an election to waive all claims with respect to the accepted goods. General Statutes § 42a-2-607 (2). The buyer who elects to keep nonconforming goods has a remedy in damages; § 42a-2-714; provided that he has given timely notice of breach to the seller; § 42a-2-607 (3) (a); and he may exercise that remedy by deducting all or any part of his claimed damages from any part of the unpaid contract price otherwise due to the seller under the same contract. General Statutes § 42a-2-717. See White & Summers, Uniform Commercial Code (2d Ed. 1980) § 8-2.

These legal principles furnish the background against which the plaintiff's claims on this appeal must be tested. The plaintiff does not challenge the trial court's conclusions of law concerning their applicability. Instead, the plaintiff's first three assignments of error contest the trial court's factual findings of defect, notice and repair costs. Our review of such claims is limited to a determination of whether the decision of the trier was clearly erroneous in light of the evidence and the pleadings in the whole record. Practice Book, 1978, § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

With regard to the finding of defects challenged by the plaintiff's first claim of error, there was testimony which the trier might have found credible that doors became warped and delaminated, that lumber was excessively knotty, and that other lumber shrank so as to cause mitered joints on specially constructed beams to come apart. This evidence was sufficient to support the finding that

the seller had delivered goods which were, at least in part, nonconforming. It is important to note, in this connection, that a buyer of goods is entitled to recover damages for goods which, in breach of warranty, are not of merchantable quality; General Statutes §§ 42a-2-314 and 42a-2-714 (2); by showing that they fail to conform to the contract "in any respect." General Statutes § 42a-2-601. He does not have to meet the higher standard of showing that the nonconformity of the goods "substantially impairs [their] value to him," which is the statutory standard governing revocation of acceptance. General Statutes § 42a-2-608 (1); see White & Summers, Uniform Commercial Code (2d Ed. 1980) § 8-3. We find no error in the trial court's determination that the defendant had sustained his burden of proof that the goods were not fully conforming and that the plaintiff was therefore in breach. See General Statutes § 42a-2-607 (4).

With regard to the trial court's finding of notice, challenged by the plaintiff's second claim of error, there was similarly enough evidence to support that finding. There was testimony of complaints to John Sandor, the plaintiff's mill estimator, and to Paul Devon, the plaintiff's mill superintendent. They themselves acknowledged that they had received complaints, both from the defendant's workmen and from the defendant himself. The standard by which notice is measured for the purposes of § 42a-2-607 (3) (a) is not as rigorous a standard as that which governs notice of rejection under §§ 42a-2-602 and 42a-2-605. As the official comment to § 2-607 points out, and the cases have held, the reason that notification is required to preserve the buyer's remedy of damages for accepted goods is to alert the seller that the transaction is still trouble-

some rather than to particularize the buyer's entitlement to damages. See, e.g., *Alafoss h. f. v. Premium Corporation of America, Inc.*, 599 F.2d 232, 235 (8th Cir. 1979); *Standard Alliance Industries, Inc.* v. *Black Clawson Co.*, 587 F.2d 813, 825–27 (6th Cir. 1978); *Automated Controls, Inc.* v. *MIC Enterprises,* unpub'd memorandum, Civ. No. 76-0-389, 27 U.C.C. Rep. 661, 673–74 (D. Neb. July 31, 1978), aff'd per curiam, 599 F.2d 288 (8th Cir. 1979); *Carlson* v. *Rysavy,* 262 N.W.2d 27, 29–30 (S.D. 1978); *Vintage Homes, Inc.* v. *Coldiron,* 585 S.W.2d 886, 889 (Tex. Civ. App. 1979); White & Summers, Uniform Commercial Code (2d Ed. 1980) § 11-10. Although the notification was oral, it was sufficient to alert the plaintiff to the possibility that it might be answerable to the defendant for breach of contract and of warranty. The plaintiff has not, on this appeal, specifically contested the timeliness of the notification. The trial court was therefore not in error in finding that the defendant had given adequate notice of breach to the plaintiff.

The third claim on this appeal challenges the finding that the defendant incurred costs of $4000 to repair the nonconforming goods received from the plaintiff. A buyer who is suing for losses arising out of his acceptance of nonconforming goods ordinarily measures his damages by the difference between the value of the goods accepted and the value of the goods if they had been as warranted. General Statutes § 42a-2-714 (2). The plaintiff does not dispute that costs of repair may be an appropriate adjunct to this statutory standard under General Statutes §§ 42a-2-714 (3) and 42a-2-715. See also *Johnson* v. *Healy,* 176 Conn. 97, 106, 405 A.2d 54 (1978). Again, the only issue is whether the defendant produced sufficient evidence to support

the trier's award of $4000 on his counterclaim. See *Willametz* v. *Goldfeld,* 171 Conn. 622, 628, 370 A.2d 1089 (1976). The defendant offered the testimony of Emery Varjassy, his painter, to support his unitemized bill of $2500 and of Mario Diacri, his carpenter, to support his unitemized bill of $1500. Both of these workmen had general responsibilities for the construction of the defendant's home; neither had been hired for the special purpose of making repairs occasioned by the plaintiff's delivery of defective goods. There were therefore no contemporaneous time records of repair work, and their bills represented instead their good faith reconstruction, after the fact, of their efforts to adapt and to fix the defective doors, lumber and beams received from the plaintiff. Once the court accepted the testimony of defective deliveries, it was entitled to give credence to the testimony about the time reasonably required to make needed repairs. There was no testimony that the work done was inappropriate or that the hourly rates charged by Varjassy and Diacri were exorbitant. There was no error therefore in the court's finding that the defendant was entitled to recover $4000 on his counterclaim.

The plaintiff's final claim of error asserts that the court should have awarded attorney's fees to the plaintiff in accordance with the terms of the written agreement between the parties. It is undisputed that the agreement provided that the defendant should pay ". . . reasonable attorney's fees in the amount of 20% of the sum referred for collection." It is equally undisputed that the plaintiff's attorney, through his own neglect, omitted to offer testimony of the reasonableness of such fees during the plaintiff's case in chief. The plaintiff con-

sistently conceded in the trial court that the attorney's fees clause was not self-executing and could not be enforced without an evidentiary showing of reasonableness. In the light of these concessions, we find no error in the trial court's refusal to award attorney's fees. See *Lebowitz* v. *McPike,* 151 Conn. 566, 568, 201 A.2d 469 (1964); *Braithwaite* v. *Lee,* 125 Conn. 10, 13–14, 2 A.2d 380 (1938). The trial court, furthermore, did not abuse its discretion in denying the plaintiff's motion to open its case in chief, after it had rested, in order belatedly to introduce the relevant evidence.

There is no error.

In this opinion the other judges concurred.