SUN HILL INDUSTRIES, INC. *v.*
KRAFTSMAN GROUP, INC.
(9945)

DALY, FOTI and LAVERY, Js.

Argued January 14—decision released June 2, 1992

*Scott M. Harrington,* for the appellant (defendant).

*L. Morris Glucksman,* with whom, on the brief, was *Mark R. Feller,* for the appellee (plaintiff).

DALY, J. The defendant, Kraftsman Group, Inc., appeals from the trial court's judgment in favor of the plaintiff, Sun Hill Industries, Inc., rendered in accordance with the report of an attorney trial referee. The defendant claims that the trial court improperly (1) found that certain cartons manufactured by the

defendant were defective and failed to conform to warrantees because the plaintiff did not offer expert testimony regarding the cause of the defective condition of the cartons, (2) shifted the burden of proof from the plaintiff to the defendant concerning the value of the cartons used by the plaintiff, (3) found that all cartons manufactured by the defendant in 1985 were defective because the evidence revealed that the defendant manufactured and shipped older and newer designed cartons during 1985 and the plaintiff offered evidence that related only to the newer cartons, and (4) abused its discretion by failing to conduct a hearing to consider the merits of each of the defendant's exceptions to that report.

The following facts are relevant to this appeal. The defendant supplied cardboard cartons to the plaintiff for the shipping and displaying of the plaintiff's products. The plaintiff and the defendant had been involved in an ongoing business relationship since 1980. During its business dealings with the plaintiff, the defendant was represented by Leon Weinstock. Weinstock was not employed by the defendant but used an office on the defendant's premises. The defendant authorized Weinstock to make quotes on proposals to the plaintiff.

The plaintiff called Weinstock concerning the 1985 Christmas season order of cardboard cartons from the defendant. Weinstock met with an employee of the plaintiff and a freelance designer in June, 1985, concerning a design for a cardboard container. This meeting resulted in the creation of a model of the cardboard container to be manufactured by the defendant. The designer prepared specifications including the strength of the cardboard to be used for the display carton. The sample and written specifications were delivered to the defendant. The written specifications were not offered into evidence. It was the defendant's practice to ship

an order only after the customer approved the samples sent by the defendant. The plaintiff approved the defendant's samples. The price of each carton was $3.44.

On July 18, 1985, the defendant shipped 7170 cartons lying flat on pallets to the plaintiff. This invoice covered two different purchase orders. Part of this invoice referred to 3000 cartons described as A392FD and 743FD, which involved a purchase order that was originally submitted on May 21, 1985. This invoice also included 4170 cartons described as A415FD and A488XC. The A415FD cartons were referred to as the defendant's order number C631. The A488XC cartons were referred to as the defendant's order number C632. On August 18, 1985, another 5515 cartons were shipped to the plaintiff. The August 18, 1985 shipment covered only A488XC and A415FD cartons. It was a continuation of the July 18, 1985 invoice.

The plaintiff retained an outside organization to assemble the cartons and pack them with the plaintiff's items. The plaintiff then shipped the assembled cartons to retail stores to be used as standing floor display units. In the fall of 1985, the plaintiff discovered that after the cartons were assembled and stacked on pallets in the plaintiff's warehouse, the lower cartons collapsed under the weight of the other cartons. As a result, the cartons were unable to function properly as display units in the retail stores. The plaintiff notified Weinstock about this problem during September, 1985. Weinstock testified that he observed a pallet that contained two sets of cardboard display cartons. Each set contained approximately 100 cardboard display cartons. The bottom set had collapsed under the weight of the top set. After observing these cartons, he took a sample to the defendant. At Weinstock's suggestion, the plaintiff ordered from the defendant additional cardboard inserts for the cartons which prevented them

from collapsing. The inserts required additional labor to install and were found to be unsightly when the cartons were unfolded as display units.

The specifications sent to the defendant called for cartons with 200 pounds per square inch bursting strength. The defendant ordered this type of cardboard from its supplier. After receiving this cardboard from its supplier, the defendant did not test it to determine if it met the 200 pound test requirement but placed a stamp on the cardboard indicating that it met the required 200 pounds per square inch bursting strength. The plaintiff ultimately was charged $48,180.40 for the display cartons; however, the defendant did not receive any payment. Weinstock paid for the cost of the cardboard inserts which amounted to $1739.

This action was referred to an attorney trial referee who found that Weinstock had acted as an agent for the defendant. The evidence offered by the plaintiff established that the cartons manufactured by the defendant failed to meet the specifications or to conform to the sample submitted by Weinstock. This resulted in the cartons' not being suitable for their intended purpose. The plaintiff failed to satisfy its burden of proving damages that resulted from the defective cartons manufactured by the defendant. Judgment was rendered in favor of the plaintiff for nominal damages in the amount of $10 on the complaint.

On the counterclaim, the referee awarded $545 to the defendant. This amount was based on the cost of the pallets used to ship the cartons to the plaintiff. The referee stated that "[b]ecause the defendant did not supply cartons in accordance with the plaintiff's orders, it is not entitled to receive the agreed value for cartons that would have conformed to the orders." The referee concluded that "[a]lthough the plaintiff used the carton for scrap and other purposes, any finding

as to the reasonable value of such cartons would of necessity be based upon speculation." Therefore, the referee did not award to the defendant the price of the display cartons that were actually used by the plaintiff.

In response to a motion for articulation, the referee stated that the evidence failed to establish a distinction between older design cartons which were not defective and newer design cartons which were allegedly defective. As to the defendant's counterclaim, the referee classified it as a claim for "unpaid cartons designed and manufactured for the 1985 Christmas market." The referee further found that "[t]he plaintiff's president's testimony that it used 2131 cartons did not establish that it benefited from those cartons or that those cartons meet specifications or conformed with the samples."

Because this case involves the sale of goods, it is governed by Article 2 of the Uniform Commercial Code (UCC). General Statutes § 42a-1-101 through 42a-2-725. Before resolving the defendant's claims, we must determine whether the referee treated the plaintiff as a rejecting buyer or as a buyer who accepted nonconforming goods under Article 2 of the UCC. The referee did not make an express finding concerning the plaintiff's status as a rejecting buyer or as a buyer who accepted nonconforming goods. On the basis of our review of the record, we conclude that the plaintiff accepted the cartons and thus was not a rejecting buyer.

According to the plaintiff's revised complaint, it notified the defendant on September 16, 1985, about the defective condition of the cartons. The revised complaint stated that the defendant was asked to remove the remaining unfit cartons and that "the purchase price be adjusted to reflect the number of boxes actually used . . . . " As mentioned previously, there was

testimony by the plaintiff's president that 2131 cartons were used by the plaintiff. The referee also found that the plaintiff used the cartons "for scrap and other purposes." General Statutes § 42a-2-606 provides that an acceptance of goods occurs when a buyer "does any act inconsistent with the seller's ownership." Here, the plaintiff used 2131 cartons and sought an adjustment of the amount owed to the defendant for the cartons actually used. These acts are clearly inconsistent with the defendant's ownership rights. Therefore, the plaintiff did not reject the cartons.

"The buyer's acceptance of goods, despite their alleged nonconformity, is a watershed. After acceptance, the buyer must pay for the goods at the contract rate; General Statutes § 42a-2-607 (1); and bears the burden of establishing their nonconformity. General Statutes § 42a-2-607 (4)." *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 563–64, 438 A.2d 759 (1980). The referee found that the plaintiff had the burden of proving both nonconformity and any damages resulting from the nonconformity of the goods. This further supports our finding that the referee treated the plaintiff as a buyer who accepted nonconforming goods.

"Acceptance, even with knowledge of the nonconformity of the goods, does not, however, constitute an election to waive all claims with respect to the accepted goods. General Statutes § 42a-2-607 (2)." Id., 564. The acceptance of nonconforming goods does not prevent the buyer from recovering damages as long as the seller was timely notified about the nonconformity. In September, 1985, approximately two months after the first shipment of cartons for the 1985 Christmas season, the plaintiff notified Weinstock that the cartons collapsed when packed with merchandise. We agree with the referee

that this notification was made within a reasonable time and therefore satisfied General Statutes § 42a-2-607 (3) (a).[1]

"If the buyer can demonstrate that he has been damaged by the nonconformity of the goods that he has accepted, he is entitled to recover such damages as he can prove. General Statutes §§ 42a-2-607 (3), 42a-2-714. Alternatively, if the buyer can demonstrate that the goods are substantially nonconforming, he is entitled, with some qualifications, to revoke his acceptance and recover the purchase price. General Statutes § 42a-2-608." *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 13–14, 441 A.2d 43 (1981).

The defendant first claims that the plaintiff's failure to offer expert testimony that the cartons were defectively manufactured and in breach of warranty prevented the court from holding the defendant liable to the plaintiff because the expert testimony was necessary to prove that the cartons did not conform to a warrantee. According to the defendant, the cause of the cartons' collapse is something beyond the field of the ordinary knowledge of a trial court.

Before addressing the need for expert testimony, we first set forth what the plaintiff was required to establish in order to find the defendant liable for the collapsing cartons. "[A] buyer of goods is entitled to recover damages for goods which, in breach of warranty, are not of merchantable quality; General Statutes §§ 42a-2-314 and 42a-2-714 (2); by showing that they fail to conform to the contract 'in any respect.' " *Stelco Industries, Inc.* v. *Cohen,* supra, 565. This is a lesser

---

[1] General Statutes § 42a-2-607 (3) provides in pertinent part: "Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."

standard than the statutory standard governing revocation of acceptance. Id. After revoking acceptance, a buyer must establish that the nonconformity of the goods resulted in a substantial impairment of value to the buyer. General Statutes § 42a-2-608. The referee found that the defendant had breached its warranty to the plaintiff because the cardboard cartons did not conform to the sample and specifications submitted by Weinstock and that the cartons were unsuitable for their intended purpose. The referee did not treat this as a revocation of acceptance because it did not make a finding that the nonconforming cartons resulted in a substantial impairment of value to the plaintiff.

It is well established that "expert testimony is required 'when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.' " *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 301, 589 A.2d 337 (1991), quoting *Bader* v. *United Orthodox Synagogue*, 148 Conn. 449, 454, 172 A.2d 192 (1961). The plaintiff and the defendant were involved in an ongoing business relationship at the time of this incident in 1985. Weinstock submitted specifications and a sample of the cardboard carton needed for the plaintiff's product. The plaintiff relied on the defendant to supply a carton that would function as a shipping and display carton. The collapse of the cartons was apparent to any viewer, in particular, the defendant's agent, Weinstock. Weinstock was an experienced salesman, familiar with cardboard display cartons. He examined these cardboard cartons and found that they were collapsed and crushed. Based on the testimony presented, the determination that these cardboard cartons were not of merchantable quality and were unfit for their intended purpose was not beyond the field of the referee's ordinary knowledge. Thus, expert testimony

was unnecessary to prove that the defendant had breached its warranty to the plaintiff.

The defendant next claims that the trial court improperly shifted the burden of proof of value of the cartons used by the plaintiff to the defendant. In resolving this claim, we also address the defendant's third claim concerning proof of the defective condition of the cartons manufactured in 1985. We find that the burden of proof as to the value of the cartons accepted by the plaintiff was improperly placed on the defendant.

The following facts are relevant to this issue. The defendant's counterclaim sought recovery for the value of the July and the August, 1985 shipments. The defendant claimed that the plaintiff had "been unjustly enriched by its failure" to pay for these shipments. The referee did not award any money to the defendant for the plaintiff's use of some of the cartons for scrap and other purposes. The referee noted that "any finding as to the reasonable value of such cartons would of necessity be based upon speculation." In its articulation, the referee further explained that "[t]he plaintiff's president's testimony that it used 2131 cartons did not establish that it benefited from those cartons or that those cartons met specifications or conformed with the samples." On the basis of this reasoning, the defendant was awarded only $545, the value of the pallets.

The defendant's counterclaim sought recovery for cartons delivered in July and August, 1985. The July shipment included 3000 cartons that were described separately as A392FD and 743FD. These 3000 cartons were ordered on May 21, 1985, by the plaintiff from the defendant. The plaintiff's president testified that the specifications and model created by the plaintiff's representative, the designer and Weinstock constituted a different design from other cartons previously ordered from the defendant. This model was

created in June, 1985. Therefore, 3000 of the cartons delivered in July, 1985, could not have been designed according to this model because the order was made before the creation of the model. The referee found that the collapsing cartons failed to conform to the specifications and model submitted by Weinstock to the defendant. There was no evidence that the 3000 cartons ordered in May were defective or unfit for their intended purpose.

The defendant challenges the legal conclusion that it was entitled to recover only the cost of the pallets on its counterclaim. This court must determine whether the decision not to award recovery for cartons used by the plaintiff was legally and logically correct. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). The referee's refusal to recommend any recovery for the plaintiff's use of cartons because there was no showing that the plaintiff benefited from these cartons was not legally and logically correct.

As mentioned previously, according to § 42a-2-607, after acceptance, the plaintiff was liable to the defendant for payment for the cartons at the contract rate. The plaintiff had to establish that the cartons were nonconforming in order to avoid liability for the contract rate for the cardboard display cartons. The testimony by the plaintiff's president that 2131 cardboard display cartons were used entitled the defendant to recover the cost of those cartons. If the plaintiff used these 2131 cardboard display cartons in its business, it would be unable to establish that they were nonconforming and unfit for their intended purpose. The defendant need not show that the plaintiff benefited from using the cartons manufactured by the defendant. If the plaintiff accepted and used the cartons, it has to pay the defendant the contract price. The defendant was not required to establish which cartons were conforming and capa-

ble of being used by the plaintiff to be entitled to recover the contract price of those cartons.

The defendant was entitled to recover on its counterclaim the cost of at least the 2131 cartons used by the plaintiff. We remand this case to the trial court for a hearing to determine how many cartons were in fact nonconforming. The plaintiff must establish which cartons were nonconforming to avoid being liable for the contract price to the defendant.

Because of our resolution of these issues, we need not address the defendant's last claim.

The judgment is reversed only as to the award to the defendant on its counterclaim, and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.