RAELENE CIARLELLI *v.* RICHARD ROMEO
(AC 16329)

Dupont, C. J., and Spear and Daly, Js.

Argued June 3—officially released August 19, 1997

*Sandra K. Gerber,* for the appellant (plaintiff).

*Kevin P. Walsh,* for the appellee (defendant).

*Opinion*

SPEAR, J. The plaintiff appeals from the judgment rendered following the trial court's granting of the defendant's motion for a directed verdict. She claims that the trial court improperly (1) precluded her expert witness from testifying as to the reasonableness of the defendant's operation of a boat and the reasonableness of the defendant's failure to warn her of a dangerous condition, and (2) directed a verdict in favor of the defendant on the plaintiff's failure to warn claim contained in paragraph 7 (d)[1] of her complaint.

The jury reasonably could have found the following facts. The defendant owned a thirty-three foot Hydra-Sport motor boat named Impatient. On July 8, 1989, the plaintiff, the defendant and Emanuel DiMauro were on board the Impatient in the Long Island Sound. Their destination was a fishing location south of Montauk, New York.

En route to their destination, the boat approached an area known as the "Montauk rips." This is an area of water off of Montauk Point where the waters of the Atlantic Ocean and Block Island Sound converge. This results in a choppy, turbulent area of water. Both the

---

[1] Paragraph 7 (d) of the plaintiff's substitute amended complaint provides: "The defendant and/or [h]is agent, servant or employee failed to warn the plaintiff that she was being exposed to a dangerous situation or to secure herself when he and/or his agent, servant or employee or both knew or should have know[n] it was unsafe not to do so."

plaintiff and the defendant had been through this turbulent area on numerous occasions. While they were navigating Long Island Sound, the plaintiff was asleep in the cabin below the deck. Neither the defendant nor DiMauro warned the plaintiff that the boat was approaching the Montauk rips. As the Impatient proceeded through the rips, there "was a little bit of a chop" in the water. The plaintiff was bounced around in the cabin and was injured when an unsecured television fell off a shelf and struck her on her back.

The following procedural history is relevant to our resolution of this appeal. The defendant moved for a directed verdict at the close of the plaintiff's case, arguing that the plaintiff failed to prove a number of allegations in her complaint. The trial court directed a verdict in favor of the defendant on all of the specifications of negligence in the complaint except two: (1) whether the defendant negligently failed to secure the television set; and (2) whether the defendant negligently failed to warn the plaintiff that the television set was unsecured. The jury returned a verdict in favor of the defendant, and this appeal followed.

I

The plaintiff first claims that the trial court improperly sustained the defendant's objection to her expert's opinion testimony regarding the defendant's failure to warn her that she was being exposed to a dangerous situation and the reasonableness of the defendant's operation of the boat. We disagree.

Prior to trial, the plaintiff disclosed that "James Dias of Marine Surveyors will render an opinion and testify as to the operation of a boat with an unsecured appliance, that it is dangerous to do so." At trial, in addition to questioning Dias in conformance with her § 220 (D) disclosure, the plaintiff sought to question him as to whether the defendant's operation of the boat was

unreasonable in general, whether he exercised proper control over the boat and whether he had a duty to warn her that they were approaching the Montauk rips. The defendant objected to this line of inquiry, arguing that it went beyond the scope of the plaintiff's disclosure.

Practice Book § 220 (D) provides that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection . . . such expert shall not testify if, upon motion to preclude such testimony, the court determines that the late disclosure (i) will cause undue prejudice to the moving party; or (ii) will cause undue interference with the orderly progress of trial in the case; or (iii) involved bad faith delay of disclosure by the disclosing party. . . ."

Practice Book § 220 (D) is intended to furnish a defendant with the details of a plaintiff's reliance on expert testimony in order to assist him with the preparation of his case. "The rules of discovery are designed to make a trial less of a game of blindman's [buff] and more of a fair contest with the basic issues and facts disclosed to the fullest extent possible." (Internal quotation marks omitted.) *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 106, 476 A.2d 1074 (1984). A trial court may, in the exercise of its discretion, impose sanctions on a party for failure to comply with the rules of disclosure. These sanctions include the exclusion of expert testimony at trial. See Practice Book § 220 (D); *Yale University School of Medicine* v. *McCarthy*, 26 Conn. App. 497, 500, 602 A.2d 1040 (1992). "The decision to preclude a party from introducing expert testimony

is within the discretion of the trial court. . . . On appeal, that decision is subject only to the test of abuse of discretion. . . . The salient inquiry is whether the court could have reasonably concluded as it did." (Citations omitted.) *Yale University School of Medicine* v. *McCarthy*, supra, 500–501.

The trial court did not specifically cite the language of Practice Book § 220 in precluding Dias' testimony. The court did find, however, that the proposed testimony exceeded the scope of the plaintiff's disclosure, that the defendant was entitled to notice of Dias' proposed testimony, that he would be deprived of such notice if Dias were permitted to testify as requested and that the plaintiff was attempting to bootstrap Dias' testimony to prove her other allegations of negligence.[2] The court then restricted Dias' testimony to the reasonableness of operating a boat with an unsecured appliance. The plaintiff has failed to demonstrate that the trial court abused its discretion by limiting Dias' testimony to that disclosed.

## II

The plaintiff next claims that the trial court improperly directed a verdict for the defendant on the specification of negligence alleged in paragraph 7 (d) of her

---

[2] The trial court made the following statements in response to the defendant's objection: "I do not know where you are going, but it would seem to me that Mr. Dias' testimony will have to be tailored to the disclosure. . . . I think that [the defendant] is entitled to an indication where you contemplate going in view of the limitation reflected in the disclosure. . . . I do not think that you should be permitted to bootstrap the testimony of this witness insofar as it related to an occurrence involving an unsecured appliance. . . . I do not think that Mr. Dias should be permitted to say, for instance, in his expert opinion that the speed was unreasonable or that the defendant did not have proper control or that the operator of this boat was not maintaining a proper lookout. [The disclosure] says here very simply that [Dias] will render an opinion and testify as to the operation of a boat with an unsecured appliance, that it is dangerous to do so. So it seems to me that the scope here of the anticipated opinion, in fairness to the opposition, is going to have to be limited . . . [to whether] it would be dangerous to operate a boat with an unsecured appliance on it."

complaint. She claims that (1) an expert witness was not required to testify as to the applicable standard of care and (2) she introduced sufficient evidence to support her allegations. We agree.

"The rules controlling appellate review of a directed verdict are well settled. Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff." (Citations omitted; internal quotation marks omitted.) *Mallinson* v. *Black*, 41 Conn. App. 373, 380–81, 675 A.2d 937 (1996).

In order to recover on a theory of negligence, the plaintiff must establish that the defendant owed a duty to her and breached that duty. *Leavenworth* v. *Mathes*, 38 Conn. App. 476, 479, 661 A.2d 632 (1995). "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) *Jaworski v. Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997). Once a duty is found to exist, whether the defendant breached that duty is a question of fact for the jury. Id.

In *Parmalee* v. *Hiller*, 129 Conn. 489, 491, 29 A.2d 586 (1942), our Supreme Court held that a boat owner's obligation to warn a passenger of a dangerous condition approximates a landowner's duty to warn an invitee of a danger not reasonably to be expected by him. Here, the trial court granted the defendant's motion for a directed verdict because it that found the plaintiff was required to prove that the defendant breached this duty

through expert testimony and because she failed to sustain her burden of proof.

"While expert testimony is permitted in a great many instances, it is *required* only when the question involved goes beyond the field of ordinary knowledge and experience of judges and jurors." (Emphasis added.) C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.16.5; see also *Sun Hill Industries, Inc.* v. *Kraftsman Group, Inc.*, 27 Conn. App. 688, 697, 610 A.2d 684, cert. denied, 223 Conn. 913, 614 A.2d 831 (1992). For example, in cases involving professional competence and malpractice, expert testimony is typically required. C. Tait & J. LaPlante, supra, § 7.16.6; see also *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 252, 654 A.2d 748 (1995) (expert testimony required in medical malpractice action except where negligence so gross as to be clear to layperson). Our courts have held that expert testimony is not required to prove the following: the effect of operating a gasoline station on traffic safety; *Gulf Oil Corp.* v. *Board of Selectman*, 144 Conn. 61, 65, 127 A.2d 48 (1956); that a criminal defendant is sane after he raises an insanity defense; *State* v. *Davis*, 158 Conn. 341, 356, 260 A.2d 587 (1969); that injuries sustained on the plaintiff's property were caused by the defendant's blasting; *King* v. *New Haven Trap Rock Co.*, 146 Conn. 482, 483–84, 152 A.2d 503 (1959); that the failure to erect a porch railing was negligent; *Bader* v. *United Orthodox Synagogue*, 148 Conn. 449, 454, 172 A.2d 192 (1961); that a fence erected around an area where blasting occurred was insufficient to guard against injuries; *Bonczkiewicz* v. *Merberg Wrecking Corp.*, 148 Conn. 573, 580, 172 A.2d 917 (1961); and that certain materials are obscene as to minors. *State* v. *Parsons*, 28 Conn. App. 91, 101–102, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992). In this case, we conclude that expert testimony is not required to resolve the question of whether the defendant breached

his duty to warn the plaintiff of the danger presented by the Montauk rips. That factual determination is not so far outside the ordinary knowledge and experience of jurors so as to require expert testimony.

Moreover, the plaintiff adduced sufficient evidence to allow the jury reasonably to conclude that the defendant negligently failed to warn her of the danger of crossing the Montauk rips. This case is factually similar to *Parmelee* v. *Hiller*, supra, 129 Conn. 489. In *Parmelee*, the plaintiff was a passenger on the defendant's boat. As the boat traveled across the Long Island Sound on calm waters, it approached "the Race, a narrow stretch of water with a varying current, frequently rough and requiring more care in navigation than the waters on either side." Id., 490. The defendant's captain had navigated boats through the Race on numerous occasions and was familiar with its characteristics. The plaintiff, however, had never been through the Race. Just prior to entering the rough waters, the plaintiff asked to go onto the "swordfish pulpit, a plank twelve inches wide, projecting twelve feet forward of the bow of the boat, with handrails supported by pipe made fast to the plank with lag screws." Id. The defendant's captain granted him permission and the plaintiff went to the pulpit. As they approached the Race, the defendant's captain did not slow down the speed of the boat and continued to operate it in the same manner as he had while it was in calm waters. Id., 490–91. The defendant's captain did not warn the plaintiff of the danger. When the boat encountered the rough water, it lurched and the plaintiff was thrown against the railing, the pulpit collapsed, and he was thrown into the water. Id. Based on these facts, our Supreme Court affirmed the trial court's finding of negligence. Id., 491.

Here, the plaintiff presented the following evidence: The Impatient was traveling at a rate of ten to fifteen miles per hour. The defendant had been through the Montauk rips on numerous occasions and was familiar

with its turbulent waters and, although the plaintiff had also been in that area previously, she was asleep in the cabin below deck. As the Impatient approached the turbulent waters of the Montauk rip, neither the defendant nor DiMauro warned the plaintiff of the upcoming dangerous condition. We conclude that the plaintiff adduced sufficient evidence to allow the jury reasonably and legally to conclude that the defendant breached a duty to warn the plaintiff of the dangerous condition presented by the Montauk rips.

The judgment is reversed and the case is remanded for a new trial on the failure to warn allegations of paragraph 7 (d) of the plaintiff's complaint.

In this opinion the other judges concurred.