[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dispute, between a purchaser and the manufacturer of a certain machine, involves alleged breaches of warranty and Article 2, Sales, Uniform Commercial Code, General Statutes § 42a-2-101 et seq. The plaintiff, Mafcote Industries, Inc. (Mafcote), is located in Norwalk, and produces various paper products. In the first count of its amended complaint dated May 9, 1996, the plaintiff alleges that on or about November 10, 1992, it purchased a "Roll/Sheet Converting Line" machine from the defendant manufacturer, Gannicott Limited (Gannicott), which is located in Scarborough, Ontario, Canada. The plaintiff further alleges that in connection with its sale of this machine the defendant made a number of express warranties regarding the operation of the machine, and that the machine did not perform as warranted.[1]
In the second count of the amended complaint, the plaintiff alleges that the machine it purchased from the defendant was "substantially defective," and that the defendant breached the implied warranty of merchantability set forth in General Statutes § 42a-2-314.[2] In the third count, the plaintiff claims that because the machine did not operate properly, the defendant also breached the implied warranty of fitness for a particular purpose contained in General Statutes § 42a-2-315.[3]
In its amended answer dated November 20, 1996, the defendant denied the material allegations of the complaint, except it agreed that it sold a certain machine to the plaintiff to use in the production of paper products. The defendant also filed eight "affirmative defenses," which claimed that any problems with the machine were the result of the plaintiff's own misuse and alteration; that the plaintiff accepted the machine after inspection and testing, and therefore waived any claims for breach of warranty; that any warranties that did exist had expired; and that the plaintiff failed to give reasonable notice to the defendant of any defects in the machine or of any breaches of warranty.
The case was tried to the court, and based on the testimony and exhibits, the following facts are found. The purpose of the machine, which is variously referred to as the "Gannicott sheeter," a "paper board sheeter line" or a "role/sheet converting line," is to convert rolls of paper to sheets of paper. The machine was purchased by the plaintiff from the defendant pursuant to a purchase order dated January 12, 1993. The purchase price was $256,140, which was paid in full to the CT Page 14217 defendant. The purchase order contained a warranty by the defendant regarding parts and that the machine would function properly for one year or 2,000 hours, whichever occurred first. The machine was manufactured specially for the plaintiff according to its specifications. The plaintiff's plant manager, Peter Rohde, a mechanical engineer, inspected the machine in April, 1993, at the defendant's plant in Ontario, and after witnessing a demonstration, he reported to Steven A. Schulman, the president and chief operating officer of the plaintiff corporation, that the machine was operating in a proper manner and was acceptable.[4] The machine was shipped in early May, 1993, to the plaintiff's Louisville, Kentucky, plant, was installed by May 13, 1993, and was operational by mid-June, 1993. Two sets of gears were defective and were replaced in July, 1993, by the defendant pursuant to its express warranties. The plaintiff subsequently purchased a Norco Overwrapper, a separate machine manufactured by Norco Packaging Machinery, Inc. (Norco), of Fort Wayne, Indiana, and installed it early in January of 1994, at the end of the line in order to package the paper produced by the defendant's machine.
Mr. Rohde, the plaintiff's plant manager in Louisville, never made any complaints about the operation of the machine to the defendant. The first written indication from the plaintiff to the defendant that the machine was not operating the way that the plaintiff envisaged came in a letter from Mr. Schulman to the defendant dated February 28, 1994, nine months after installation. There were essentially two complaints. The first was that the machine would jam if it ran at a production rate of 500 feet per minute, and that it could not be operated by just one man, but rather required two, including a separate packer.[5]
The plaintiff has not claimed that there were any notices to the defendant of the alleged nonconformity of the sheeter with the contract or with the warranties contained therein prior to the February 28th letter. The plaintiff points to the replacement of two sets of gears as proof that the defendant was put on notice that the sheeter was malfunctioning. The defendant was, however, simply notified that the gears were defective, not about jamming at high speeds or the requirement of two employees.
Also, on February 28, 1994, Mr. Schulman wrote to Norco complaining that its overwrapper was experiencing jam-ups, which CT Page 14218 in turn "causes the Line to go down for extended periods of time." Mr. Schulman pointed out possible causes for the jam-ups, including that the Gannicott batches were "slightly skewed (which, in any case, is your responsibility to correct) or defects in the transference from the Sheeter to the Overwrapper in your conveyor system." In mid-July, 1994, the plaintiff sued Norco in this court for breaches of both express and implied warranties. The case was ultimately settled and withdrawn.
In early March, 1994, the plaintiff asked the defendant to come to Louisville to inspect the machine, but the defendant declined to do so unless it was reimbursed for the trip, which the plaintiff refused. The plaintiff then hired Genik, Inc., of Richmond, Virginia, in March, 1994, to install an automatic decurl bar, a second unwind station and a sheet jam detector at a cost of $62,000, none of which, however, enabled the machine to produce paper product at 500 feet per minute or to be operated by just one person.[6]
Mr. Schulman testified that his company had been damaged in the amount of $1,287,000. The plaintiff's chief financial officer calculated damages as $750,000, and an expert appraiser, who testified at trial, indicated that the plaintiff had been damaged in the approximate amount of $162,000.
The issues in this case are: (1) did the defendant warrant that the machine could produce paperboard at speeds up to 500 feet per minute and/or that one man alone could operate the machine; and (2) if such warrant, was in fact made, did the plaintiff give notice of the breach to the defendant within a "reasonable time" as required by General Statutes § 42a-2-607(3)a.[7]
The evidence indicates that the machine could not produce the product at speeds up to 500 feet per minute (F.P.M.) without significant jamming, and also that two men were needed, the operator and a packer at the overwrap station. The final purchase order of January 12, 1993,[8] referred to the machine's "maximum speed" as being 500 feet per minute, but did not contain an express warranty that the sheeter could produce product at that rate. Although it was Mr. Schulman's often expressed desire[9] that one person alone operate the sheeter, there is no express warranty to that effect. Mr. Gannicott testified that the sheeter alone could be operated by just one person but it appears that the one-operator concept became difficult, if not impossible, after the Norco overwrapper was CT Page 14219 added. Moreover, Mr. Rohde testified that one man could not operate both the sheeter and the overwrapper, and he also stated that jam-ups are to be expected in this particular operation.
The plaintiff claims that an express warranty was created because there was a "promise" by the defendant that the sheeter could maintain a production rate of 500 feet per minute. The plaintiff also contends that the "description" of the machine indicates that it could be operated by only one employee. The plaintiff does not point, however, to any specific language in the operative purchase order to that effect. Mr. Gannicott wrote to Mr. Schulman "when and where did we agree that one operator would tend the entire line?" Mr. Schulman replied that the one operator theory was "discussed and confirmed in correspondence between us prior to the order," but does not claim that "one operator" was made as an express warranty in the operative purchase order.
These facts, plus that Mr. Schulman was a sophisticated and astute purchaser of the sheeter and that the plaintiff's plant manager witnessed a demonstration of the machine prior to its being shipped to Louisville, lead to the conclusion that the plaintiff did not sustain its burden of proof that the defendant violated any expressed warranties. Even if it had, the plaintiff failed to prove that it gave notice thereof to the defendant within a reasonable time after the alleged defects were either actually discovered or "should have [been] discovered." General Statutes § 42a-2-607(3)a. "The buyer's acceptance of goods, despite their alleged nonconformity, is a watershed. After acceptance, the buyer . . . bears the burden to establish their nonconformity." Stelco Industries, Inc. v. Cohen, 182 Conn. 561,563-64, 438 A.2d 759 (1980). Almost nine months elapsed between the time when the machine first operated in Louisville and the time when Mr. Schulman expressed his dissatisfaction in writing to the defendant. During that period, the plaintiff's own plant manager in Louisville did not register any complaints with the defendant manufacturer. The purpose of the notification to the seller is to "alert the seller that the transaction is still troublesome." Id., 565.
The plaintiff also argues that even if it did not sustain its burden of proof that the defendant breached any express warranties, nevertheless, it has proved that the defendant breached the "implied" warranties of merchantability and fitness for a particular purpose described in footnotes 2 and 3, page 2, CT Page 14220 above. However, if there are no express warranties regarding production at a certain rate or the operation of the sheeter by one man, it is difficult to discern why there could be breaches of any implied warranties. The machine did convert rolls of paper to sheets of paper, which was its purpose, and is still in operation in the Louisville plant. The machine is not performing according to the plaintiff's wishes, but the plaintiff cannot point to any specific express warranties that the defendant breached.
Judgment may enter for the defendant. Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of December, 1998.
William B. Lewis, Judge