[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY TOWN OF SOMERS
The defendant Town of Somers has moved for summary judgment in its favor on Counts Four, Six and Seven of the plaintiffs' July 28, 1997 Amended Complaint on the grounds that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law.
Facts
The plaintiff Somers Mill Associates, Inc. is the owner of a multi-story brick building and surrounding property which straddles the Scantic River in the Town of Somers and is referred to locally as "the Somers Mill". The shareholders of Somers Mill Associates, Inc., plaintiffs Lawrence P. Brophy, John Ahern, Frank Perotti, Jr. and Thomas Santa Barbara, Jr., purchased this property in order to explore the possibility of renovating the mill building and converting it to a multi-unit residential development.
The plaintiffs allege, and the defendants do not dispute, that at the time they purchased the Mill building in 1988, the Flood Insurance Rate Map ("FIRM")[1] for the vicinity of the Somers Mill bore a notation that indicated that the 100-year flood elevation[2] at the upstream side of the Somers Mill was 180 feet NGVD.[3] It is also not in dispute that, at the same time, the Flood Insurance Study ("FIS")[4] showed a flood elevation at the upstream side of the Somers Mill of 188.7 feet NGVD.
In 1995, FEMA resolved the discrepancy between the two documents by definitively establishing that the 100-year flood elevation at the upstream side of the Somers Mill was 188.7 feet, and revising the FIRM to reflect that fact. The first floor of the plaintiffs' building varies in elevation between 181 and 184 feet. It is undisputed that the entire first floor of the building is below the 100-year flood elevation of 188.7 feet. Federal and local regulations forbid any residential CT Page 2556 development at a level equal to or below the 1 00-year flood elevation.
Immediately upstream of the Somers Mill building is the Maple Street Bridge. The Maple Street Bridge consists of a stone masonry and earth structure, topped by Maple Street, and having two semi-circular arch culverts through which the Scantic River flows. Water flowing downstream must first pass under the Maple Street Bridge, and then under the Somers Mill building.
Count Four seeks recovery for injuries alleged to have arisen from an "absolute private nuisance" which the Town has created by "erecting and maintaining" the Maple Street Bridge. It is alleged that the Town of Somers "erected, owns and maintains" the Maple Street Bridge and that the Maple Street Bridge creates "an unreasonable and continuous restriction" of the flow of the Scantic River. It is further alleged that the natural effect of this restriction is to "increase the 100-year flood elevation at the upstream face of the Somers Mill" and that, "in the absence of the Maple Street Bridge, the 100-year flood elevation at the upstream face of the Somers Mill would be at a level which would permit its use and development for residential purposes."
Count Six seeks damages pursuant to 42 U.S.C. § 1983 for an alleged deprivation of rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, specifically the right not to be deprived of property without due process of law. Count Six alleges that up until June, 1995, Town of Somers officials, including defendant Steve Jacobs, "intentionally and recklessly" represented that the flood level was 180 feet NGVD, then "changed position" and maintained that the flood elevation was 189 feet NGVD The Town's "insistence" that the flood level is 189 feet NGVD has rendered the property "impossible or economically impracticable" to develop.
Count Seven also seeks damages pursuant to 42 U.S.C. § 1983 for an alleged deprivation of rights guaranteed by the Fifth andFourteenth
Amendments to the United States Constitution, specifically the right not to have property taken for public purposes without just compensation. Count Seven repeats and re-alleges the nuisance claims of the Count Four with respect to the Maple Street Bridge and asserts that the creation and maintenance of the bridge has resulted in a taking of the Plaintiffs' property rights, for which they have not received just compensation, in violation of their federal constitutional rights.
Discussion of the Law and Rulilng
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any CT Page 2557 other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. Middlesex Ins. Co.,219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson,176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stain, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
Count Four alleges an "absolute private nuisance."[5] In order to prove a claim of private nuisance, a claimant must show 1) that the condition complained of had a natural tendency to create danger and inflict injury upon person or property; 2) the danger created was a continuing one; 3) the use of the land was unreasonable or unlawful; and 4) the existence of the nuisance was the proximate cause of the plaintiffs injuries and damages. Elliott v. Waterbury, 245 Conn. 385,420, 715 A.2d 27 (1998); Keeney v. Old Saybrook, 237 Conn. 135, 162-63,676 A.2d 795 (1996); Tomasso Bros., Inc. v. October Twenty Four, Inc.,221 Conn. 194, 197, 602 A.2d 1011 (1992); State v. Tippetts AbbettMcCarthy Stratton, 204 Conn. 177, 183, 527 A.2d 688 (1987); Filisko v.Bridgeport Hydraulic Co., 176 Conn. 33, 35-36, 404 A.2d 889 (1978). These elements are required in a nuisance action against a town as well as against a private individual. Filisko, supra at 35-37.
The undisputed evidence in this case demonstrates that the plaintiffs CT Page 2558 cannot satisfy the fourth element of their nuisance claim: they cannot show that the "nuisance" they allege the Town has created and maintained, i.e., the Maple Street Bridge, is the proximate cause of their injuries and damages.
The plaintiffs have alleged in their Complaint that the Maple Street Bridge has a "natural and inevitable tendency" to "increase the 100-year flood elevation at the upstream face of the Somers Mill" and that "[i]n the absence of the Maple Street Bridge, the 100-year flood elevation at the upstream face of the Somers Mill would be at a level which would permit its use and development for residential purposes." Count Four, ¶¶ 10 and 11.
There is no dispute that the complex engineering analysis that goes into making a determination as to the impact of a structure (such as a bridge) on the 100-year flood elevation is a subject beyond the field of ordinary knowledge and experience of judges and jurors, and one that requires expert testimony. See, generally, C. TAIT J. LAPLANTE, CONNECTICUT EVIDENCE, (3d.Ed. 2001) § 7.5.4; see also, Sun HillIndustries, Inc. v. Kraftsman Group, Inc., 27 Conn. App. 688, 697,610 A.2d 684 cert. denied, 223 Conn. 913, 614 A.2d 830 (1992).
In fact, the plaintiffs did retain an expert to testify in this case as to the impact of the Maple Street Bridge on the 100-year flood level. That expert, Edward T.T. Chiang, P.E., PhD., testified regarding this question on two occasions. In the first instance, on June 6, 2001, he testified regarding what would happen if the area under the Maple Street bridge were widened, allowing more water to pass through:
 Q: . . . Have you performed any analysis as to the impact on the flood elevation were you to simply do one thing, widen the cross sectional area under the bridge, but leave the building as it is?
A: No, I didn't. I didn't do that.
 Q: Without performing an analysis, do you have any opinion as to what the impact of merely widening the cross-sectional area under the bridge would be on the flood level, the 100-year flood level . . . at the face of the building?
 A: At the face of the building, the impact for the level, flood level were not that much different.
Q: So if we simply widen the bridge, that's not CT Page 2559 going to have much of an impact on the flood level?
 A: Yeah. The flood level impact but not that significantly as far as the flood level goes. Only changes technically what is the high velocity from the bridge. What happens right now is under the bridge, the water goes high velocity, and the water goes over the bridge high velocity, When the two join each other, one horizontally, one vertically.
Q: It causes turbulence?
 A: Turbulence. The only reduction the impact of the turbulence. So the level can be dropped a little bit, but not significant enough, you know, to change the — I guess the situation in this case.
On the second occasion, July 13, 2001, Dr. Chiang testified as follows:
 Q: . . . If you took out the Maple Street Bridge entirely —
A: Right.
 Q: — just took it out, removed it completely, would that be enough to reduce the flood elevation at the upstream face of the Somers Mill Building such that it could be used for residential purposes?
A: It would not reduce the flood level.
 Q: You would not reduce it at all or sufficiently to allow residential development?
 A: You would not — practically you would not reduce that much to make any difference. The only change, you know, hydraulic sense, is you reduce the turbulence generated by the high velocity in that bridge. But the water level will not change that much.
 Q So is it fair to say that you would disagree with that statement in paragraph 11 [of Count Four of the Complaint]?
A I would not agree with the statement in number CT Page 2560 11.
Again, Paragraph 11 of the Complaint claims that "[i]n the absence of the Maple Street Bridge, the 100-year flood elevation at the upstream face of the Somers Mill would be at a level which would permit its use and development for residential purposes." Dr. Chiang categorically disagrees with that statement. He will testify that the Maple Street Bridge has little or no impact on the 100-year flood elevation at the upstream side of the Somers Mill.
A proximate cause is "an actual cause that is a substantial factor in the resulting harm." Ferri v. Pyramid Construction Co., 186 Conn. 682,687, 443 A.2d 478 (1982), quoting Coburn v. Lenox Homes, Inc.,186 Conn. 370, 383, 441 A.2d 620 (1982). "Actual cause requires allegations that state that the particular injury would not have occurred in the precise way that it did occur without the defendant's conduct."Hall v. Winfrey, 27 Conn. App. 154, 158, 604 A.2d 1334 (1992), quotingCoste v. Riverside Motors, Inc., 24 Conn. App. 109, 112, 585 A.2d 1263
(1991).
Based on Dr. Chiang's expert testimony, the impact of the Maple Street Bridge upon the 100-year flood elevation at the upstream face of the Somers Mill is insignificant. Completely removing the bridge would not alter the 100-year flood elevation in such a way that the plaintiffs' property could be developed for residential purposes. Under these circumstances, the existence of the bridge is not a proximate cause of the plaintiffs' injuries.
The plaintiffs have failed to introduce any expert opinion other than that of Dr. Chiang set forth above. That testimony directly contradicts the gravamen of the nuisance claim that "in the absence of the Maple Street Bridge, the 100 year flood elevation at the upstream face of the Somers Mill would be at a level which would permit its use and development for residential purposes." Therefore, they have no evidence that the actions of the Town in maintaining the Maple Street Bridge was a proximate cause of their inability to develop the Mill for residential purposes. Summary Judgment may enter in favor of the Town of Somers on the Fourth Count of the Complaint.
In Count Six, the Plaintiffs allege that as a result of "intentional or reckless misrepresentations by the Town of Somers and the defendant Steven Jacobs concerning the 100-year flood level" they have been deprived of property without due process of law.
In order to state a claim under 42 U.S.C. § 1983, the plaintiffs must demonstrate that the Town of Somers adopted or promulgated a policy CT Page 2561 statement, ordinance, regulation, or decision that resulted in a deprivation of a constitutional right:
 To state a cause of action under § 1983, a plaintiff must allege that a deprivation of federal rights has occurred under color of any statute, ordinance, regulation, custom or usage . . . The touchstone of a § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected in the Constitution . . . Municipal liability under 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by city policy makers . . . In addition, § 1983 also authorizes suit for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels. Tedesco v. Stamford, 215 Conn. 450, 456-57 (1990) (Citations omitted; internal quotation marks omitted.).
The plaintiffs do not allege any formal adoption of a policy or ordinance by the Town of Somers. Instead, they allege that until 1995 the Town and its Sanitarian employed a 100-year flood elevation of 180 feet NGVD at the upstream face of the Somers Mill, and after June of 1995, they "changed position" and employed a 100-year flood elevation of 189 feet NGVD. Count Six, ¶ 15.
The Town of Somers, like every other municipality which participates in the National Flood Insurance Program, employs the 100-year flood elevation as a regulatory standard.[6] the Town of Somers does not set, adopt, promulgate or otherwise establish the 100-year flood elevation. The Federal Emergency Management Administration establishes the 100-year flood elevation. ."
The Town of Somers did not "change position" on the 100-year flood elevation in June 1995. In June 1995, FEMA — based upon a requestinitiated by the Plaintiffs — issued a "Letter of Map Revision" ("LOMR") which resolved an existing discrepancy between the FIRM and FIS and defined the 100-year flood elevation at the face of the Somers Mill as 188.7 feet.
As is clearly stated in Tedesco, supra "[m]unicipal liability under 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by cityCT Page 2562policy makers." Tedesco v. Stamford, 215 Conn. 450, 456-57, 576 A.2d 1273
(1990) (Emphasis added). In this case, there was no list of "various alternatives" for the Town of Somers to choose from with respect to the 100-year flood elevation at the upstream face of the Somers Mill. There is only one flood elevation and it is established by FEMA. The Town of Somers merely enforces FEMA's prohibition against any residential development below the 100-year flood elevation. Working with that number fixed by FEMA, the Town of Somers can either permit residential development if the project is above the 100-year flood elevation, or prohibit residential development if the project is below the 100-year flood elevation.
The plaintiffs' complaint does not allege a policy or custom that resulted in a deprivation of a constitutional right. The undisputed facts demonstrate that there has been no "policy or custom" adopted by the Town of Somers with respect to the Plaintiffs project, only the use of a federally mandated regulatory standard — the 100-year flood elevation. Under such circumstances, the plaintiffs cannot maintain an action against the Town of Somers under § 1983, and summary judgment in favor of the defendant Town of Somers is hereby wanted as to Count Six.
Count Seven seeks damages pursuant to 42 U.S.C. § 1983, alleging that the plaintiffs have been deprived of their Fifth andFourteenth
Amendment rights to be free from a taking of property without just compensation. The Town's argument seems to be that the plaintiffs failed to exhaust administrative remedies and that this Count should fail because it does not seek "inverse condemnation."
 A "taking" may be complete without an actual, physical appropriation of property. Slavitt v. Ives, 163 Conn. 198, 207, 303 A.2d 13; Stock v. Cox, 125 Conn. 405, 419, 6 A.2d 346; see 2 Nichols, Eminent Domain (3d Ed.) 6.1(1).
Laurel, Inc. v. State, 169 Conn. 195, 201, 362 A.2d 1383 (1975).
There is, however, no confiscation of property or a taking in the constitutional sense unless the property cannot be utilized for any reasonable and proper purpose; Zygmont v. Planning Zoning Commission, 152 Conn. 550, 556, 210 A.2d 172; Vartelas v. Water Resources Commission, 146 Conn. 650, 153 A.2d 822; as where the economic utilization of the property is, for all practical purposes, destroyed. See Dooley v. Town Plan Zoning Commission, 151 Conn. 304, 197 A.2d 770; CT Page 2563 Platt Bros. Co. v. Waterbury, 72 Conn. 531, 45 A. 154. See also Del Buono v. Board of Zoning Appeals, 143 Conn. 673, 678, 124 A.2d 915. "Unless the injury to the remaining land is so severe as to render it useless for any purpose, the condemnor taking part of the lands is not bound to pay the full value of the entire tract, even if, by reason of injury to such land, the owner has abandoned all use of the property." Annot., 27 Am.Jur.2d, Eminent Domain, 310, p. 311; Hutchinson v. Maiwurm, 162 N.W.2d 408 Iowa).
Id. at 201-202.
The plaintiffs need not use the magic words "inverse condemnation" in their Complaint. Count Seven alleges that the actions of the Town have rendered the Mill property unusable for any reasonable purpose. Therefore, the Motion for Summary Judgment is denied with respect to Count Seven.
By the court,
Aurigemma, J.