[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Some of the background facts are not in dispute and relevant to this action. In March of 1994, Albert and Carl Lucchino (sometimes referred to as buyer), began negotiations with the defendant, Patrick Creamer (sometimes referred to as Mr. Creamer or seller), to purchase all of the assets owned by his corporation, the co-defendant, Brewster Harley-Davidson Sales, Inc. (sometimes referred to as Brewster Harley-Davidson). This corporation held the exclusive franchise to sell new and used Harley-Davidson motorcycles and accessories in part of Putnam County and in certain towns in lower Fairfield County, including Danbury, Connecticut. Since the Harley-Davidson Motor Company was not issuing any new franchises, any prospective buyer such as the plaintiff (sometimes referred to as the Lucchinos), would have to buy an existing franchise. The defendant, Mr. Creamer, knew the Lucchinos intended to move the franchise from Brewster, New York, to a new building they were constructing at 51 Federal Road in Danbury, Connecticut. The negotiations resulted in the parties signing a written agreement to purchase this business on July 22, 1994. The parties also signed a second agreement that Mr. Creamer would act as a consultant to the buyer after the closing of title, and on December 23, 1994, a consulting agreement was signed. The Lucchinos formed a Connecticut corporation, Harley-Davidson of Danbury, Inc., and assigned all of their interest in the agreement to the new corporation, with the consent of the defendant corporation, on December 29, 1994. The purchase price for the entire business and the Harley-Davidson franchise was $450,000 allocated as follows: Inventory $350,000; tools, fixtures and equipment $95,000; and the good will with a covenant not to compete $5000. The closing took place on December 29, 1994 in Danbury, Connecticut.
The buyer received a $40,000 credit for inventory at the closing reducing the purchase price to $410,000. Subsequently, on January 17, 1995, a physical inventory was taken by the seller which resulted in the purchasers receiving an additional credit of $10,000, for a net purchase price of $400,000. Since the new CT Page 14111 building was not ready for occupancy at the time of closing, the parties agreed that the inventory and equipment would remain in the Brewster location until the new building was completed. The inventory and equipment was delivered to the Danbury location in February of 1995. At that time, the buyers inspected the inventory and equipment and subsequently claimed part of this inventory was not saleable and some of the equipment was defective and unusable.
In the consulting agreement, the parties agreed that the defendant, Mr. Creamer would advise them for a maximum period of one year after they opened for business in Danbury. The plaintiff buyer agreed to pay a flat fee of $50,000 plus a new Harley-Davidson motorcycle. When he reported for work on April 11, 1995, the plaintiff, Carl D. Lucchino, told him he was fired for cause in that he violated the non-compete clause in the contract after the closing and had lost trust in him. He also claimed he failed to account for the motorcycles, the parts and accessories that he sold after the closing in violation of the agreement.
On May 11, 1995, the plaintiffs served the complaint on the defendants alleging a breach of contract, fraud, misrepresentation, breach of warranties, breach of good faith and fair dealings, an unfair and deceptive acts and practices. The first six counts were solely against the defendant corporation and the remaining two counts were against the defendant, Mr. Creamer. The plaintiff sought both monetary damages and injunctive relief. The defendants' answer, dated July 26, 1995, denied all eight counts, and by way of cross complaint, sought $50,000 in damages agreed to as a flat fee, and a new FHLR Road King motorcycle under the consultant contract.
Between the time the agreement was signed on July 23, 1994, to the date of closing on December 29, 1994, the seller agreed to continue selling and servicing these motorcycles, thereby promoting good will with his customers for the buyer. The buyers were allowed access to the Brewster location on at least five occasions from March, 1994, to the date of closing. The seller also provided them with profit and loss statements and other financial statements prepared by his accountant, as well as his customer lists. The negotiations for the purchase were conducted primarily by Carl D. Lucchino and his brother, Albert Lucchino. Carl Lucchino was a graduate of Georgetown Law School and had practiced law during the past nine years at Skadden and Arps, one CT Page 14112 of the largest and most prestigious law firms in New York City. He prepared the comprehensive fifteen page acquisition agreement, the consultant agreement, and the corporation documents for this new business. His brother Albert is a certified public accountant and has earned his master degree in business administration from Pace University. Neither of them had any prior experience in the motorcycle business.
The seller had owned and operated the Harley-Davidson franchise in Brewster for the past twenty-six years. He was a high school graduate, and his experience and knowledge of Harley-Davidson motorcycles was most impressive. After he delivered the inventory and equipment to the Danbury store between January and April, 1995, the plaintiff, Carl D. Lucchino, testified that some of the inventory and equipment was defective and was not fit for use in the ordinary course of business and believed was in breach of warranty under paragraph 4.1(e) of the agreement. The additional claims are set forth in the complaint as previously stated in this opinion.
The representations and warranties were set forth under paragraph 4.1(e) of the acquisition agreement in which the defendant seller agreed that all inventory would be saleable in the ordinary course of business or such inventory would be usable in servicing motorcycles.
Section 42a-2-313 of the Connecticut General Statutes provides that an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," and subsection (b) provides that "[a]ny description of the goods which is made part of the basis for the bargain creates an express warranty that the goods conform to the description."
The plaintiffs bear the burden of proof that the seller breached the expressed warranty by a preponderance of the evidence. Whether the plaintiffs have sustained their burden of proof is a question of fact for the trial court. Vezina v.Nautilus Pools, Inc., 27 Conn. App. 810 (1992).
A buyer of goods in inventory is entitled to recover damages for goods which, in breach of warranty, are not of merchantable quality by showing that they fail to conform to the contract in any respect. Stelco Industries, Inc. v. Cohen, 182 Conn. 561
(1980); Sun Hill Industries v. Kraftsman Group, Inc., CT Page 1411327 Conn. App. 688 (1992).
Only two witnesses testified at this three day trial, the plaintiff buyer, Carl D. Lucchino, and the defendant seller, Patrick Creamer. From the testimony of the plaintiff, Carl D. Lucchino, the court finds these facts as to the following claims:
A. INVENTORY
There were over 360 items that the plaintiff buyer was unable to sell or use in the ordinary course of business because they were either rusty, broken or were missing parts. The unit cost of parts that could not be used totaled $5220.57. The court finds the buyer paid for these items which he could not sell or use on new or used motorcycles and is entitled to damages of $5220.27 under the expressed warranty in paragraph 4.1(e) of the agreement.
B. DAMAGED EQUIPMENT
The plaintiffs next claimed five items of equipment were defective or damaged when delivered after the closing claiming damages of $9661.99. Paragraph 4.2(c) of the agreement provides that "Buyer has examined the tools, equipment, furniture . . . and will accept them in their present state and condition . . . subject to reasonable wear and tear . . ." The plaintiff claimed damages of $1850 to repair the computer; $1650 to lease a new copier; $350 to repair one of ten parts in the telephone system; and $4725 for new shelving to replace the old shelving. The plaintiffs were on the sellers premises at least five times from March, 1994 to February, 1995. They had ample opportunities to inspect or test this equipment. The shelving was in plain view, and they knew it had been used. The court believed the seller's testimony that the buyers were never denied access to inspect or test the equipment to determine whether it was suitable for the uses intended and free from any defects. The plaintiff has failed to prove these claims by a preponderance of the evidence.
The court believed the plaintiff's testimony that an air compressor was delivered inoperable. He submitted a receipted bill of $1086.19 as proof of payment. The plaintiff is entitled to a credit for this amount.
C. LOSS OF PROFIT ON PREQUOTED MOTORCYCLES
CT Page 14114
The defendant was obligated under the agreement to continue in business until the sale closed on December 29, 1994. The fact that the seller quoted prices on motorcycles below the suggested retail price did not violate the agreement. Therefore, the plaintiff's claim for lost profits of $4170 must fail.
D. SALE OF MOTORCYCLES AND ACCESSORIES POST CLOSING
The agreement provides in paragraph 1.1(a)(iii) for all deposits received by the seller for motorcycles sold prior to the closing belonged to the buyer. There were four motorcycles sold by the seller after the closing in which he made a total profit of $8378. These lost profits of $8378 should be credited to the buyer because it was entitled to them under the agreement.
E. ITEMS PAID FOR BY THE PLAINTIFF BUT NOT DELIVERED
Paragraph 1.1a of the agreement provided for the buyer to purchase from the seller the furniture, fixtures, equipment, tools, manuals, catalogs, literature, customer lists, computer hardware and software. The seller charged the buyer $5000 for a customer list it did not receive. Therefore, the plaintiff buyer is entitled to damages of $5000.
The seller also failed to deliver certain specified personal property which were valued as follows: (1) an IBM Selectric typewriter $325; (2) shipping scales $20; (3) an adding machine $40; (4) miscellaneous stationery $1500; (5) a trailer ball and tong for a van $75, for $1960 in damages. The court finds total damages of $6960 under this provision in the agreement in favor of the buyer.
F. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS ANDCOVENANT NOT TO COMPETE
The seller consummated four motorcycle sales after the closing and retained the profit of $8378 which this court has previously awarded to the buyer. The evidence and testimony clearly established that the seller had closed his business late in January, 1995, sold the real estate in Brewster from which the business was conducted, and has retired to live in upstate New York. The plaintiff buyer has failed to prove any additional losses under these two covenants. CT Page 14115
G. ATTORNEY'S FEES
The hold harmless clause, as set forth in paragraph 5.6(b) of the agreement, includes a reasonable attorney's fee as recoverable damages to the buyer relating to the seller's conduct in his operating this business. The buyer has sustained its burden of proof that the seller failed to deliver certain inventory and equipment warranted under the agreement. The buyer has a contractual right to collect a reasonable attorney's fee for representing the buyer in this action. The court finds a reasonable attorney's fee of $10,000 in favor of the buyer.
The court has considered the defendant (seller) counterclaim alleging a breach of the consulting agreement and his claim for damages of $50,000, and a new Harley-Davidson motorcycle. This agreement was to become effective on April 8, 1995, the date the plaintiff (buyer) opened the business in Danbury. The defendant reported for work on April 11, 1995, when he was told by Mr. Carl D. Lucchino that the agreement was terminated for cause. He had lost faith and trust in him for his breach of warranties and in the other violations under the acquisition agreement. The consulting agreement went into effect on April 8, 1995, before the defendant had rendered any consulting services. The defendant failed to prove that he was entitled to any damages under the consulting agreement.
The defendant also alleged that the plaintiffs made certain misrepresentations to induce him to sign this agreement. He was represented by capable counsel throughout this sale and failed to prove any misrepresentations made to him by the plaintiff.
The third and final claim alleged was the infliction of emotional distress on him by the plaintiff. The defendant failed to prove any monetary damages under this claim.
The defendant's final claim is for legal fees. There was no provision in the agreement or by statute to award him legal fees which in either case is discretionary with the court and is hereby denied.
In summary, the court has awarded the plaintiff damages in this decision as follows:
A. Inventory $ 5,220.57 CT Page 14116
B. Damaged equipment 1,086.19
C. Sale of motorcycles post closing 8,378.00
D. Property paid for but not delivered to the buyer 6,960.00
E. Attorney's fees 10,000.00
TOTAL DAMAGES $31,644.76
Judgment is entered for the plaintiff for total damages of $31,644.76.
Petroni, J.