[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#109)
Before the court is the defendant's motion for summary judgment with respect to the first (breach of contract) and fourth (declaratory judgment) counts of the amended complaint. Defendant contends that the contract is unambiguous on its face, and the defendant had the contractual right to terminate the parties' contract as a matter of law. Additionally, the court must determine whether the plaintiff's cross-motion for summary judgment should be granted with respect to the same two counts of the amended complaint because the contract is clear on its face, and the defendant did not have a contractual right to terminate the contract as a matter of law.
The amended complaint alleges the following facts. The plaintiff, Message Center Management, Inc. (Message Center), is a Delaware corporation with its principal place of business in CT Page 1588 Hartford, Connecticut. The defendant, Shell Oil Products, Company (Shell), is also a Delaware corporation, but it has its principal place of business in Houston, Texas.
Sometime in April of 1996, the plaintiff and the defendant entered into a "Management Agreement," in which the plaintiff was appointed the exclusive communications agent for defendant. (Pl.'s Am. Cmplt ¶¶ 3, 4.) of particular importance here, the complaint alleges that the Management Agreement appointed the plaintiff as the exclusive agent for the defendant for a period of five years.
By letter dated May 20, 1997, however, the defendant gave notice to the plaintiff that the defendant was terminating the Management Agreement effective December 1, 1997. The plaintiff alleges that this termination of the Management Agreement prior to its 2001 expiration date constituted a breach of contract on the part of the defendant.
In addition, the plaintiff claims that the defendant breached the Management Agreement by refusing to consent to three tenant "License Agreements" despite the fact that these License Agreements were presented to the defendant prior to the December 1, 1997 termination date. (Pl.'s Am. Cmplt ¶ 8.)
As a result of the foregoing, on June 26, 1997, the defendant. Specifically, the plaintiff's complaint alleges claims for, respectively: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-100b et seq. (CUTPA) and (4) a declaratory judgment as to whether the defendant had a contractual right to terminate the entire Management Agreement; and also, whether prior to the termination date of the Management Agreement, the defendant could, in its sole discretion, refuse to approve the Licence Agreements.
Presently, the defendant has moved for summary judgment with respect to counts one and four of the amended complaint. The plaintiff has cross-moved for summary judgment with respect to these same counts, as well as to count two of the amended complaint.[1]
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and CT Page 1589 any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp. , 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). The genuine issue aspect of summary judgment procedure requires that, prior to trial, the parties provide the court with evidentiary facts, or substantial evidence outside of the pleadings from which the material facts alleged in the pleadings can be inferred. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578-79, 573 A.2d 699 (1990);United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378-79, 260 A.2d 596 (1969). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. . . . The test to be applied would be whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,228 Conn. 928, 640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . ." Ciarelli v.Romeo, 46 Conn. App. 277, 282, 699 A.2d 217, cert. denied,243 Conn. 929, 701 A.2d 651 (1997); see also Mullen v. Horton,46 Conn. App. 759, 763, 700 A.2d 1377 (1997) (directed verdict rendered only where, on the evidence viewed in light most favorable to nonmovant, trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed).
 I. Choice of Law provision
Before the court addresses the merits of the parties' claims, both parties have indicated in their briefs that the Management Agreement is governed by Delaware substantive law.[2] (Def.'s Mem. B; Pl.'s Mem. p. 24). The Management Agreement itself states that it is to be "construed in accordance with the laws of the state of Delaware." (Management Agreement ¶ 21.) Therefore, in accordance with Connecticut choice of law principles, this court will apply Delaware substantive law to the facts of this action. See Elgar v. Elgar, 238 Conn. 839, 852, 679 A.2d 937
(1996). CT Page 1590
 II. Counts One and Four
Under Delaware substantive law, "[i]n construing the terms of a contract, the courts are not bound by the literal language of the agreement, but can engage in the process of interpretation by which the respective rights and duties of the parties are determined." Pack Process. Inc. v. Celotex Corp. , 503 A.2d 646,655 (Del.Supr. 1985). In fact, "[i]f a contract contains some ambiguity . . . courts may employ rules of construction to consider facts other than the contractual terms themselves. DuPont v. Wilmington Trust Co., 45 A.2d 510, 517 (Del.Ch. 1946)."Haft v. Dart Group Corp. , 841 F. Sup. 549, 565 (D.Del. 1993).
"A contract is `ambiguous' only when the `provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'Rhone-Poulenc v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196
(Del. 1992)." Haft v. Dart Group Corp. , supra, 841 F. Sup. 565. "Ambiguity is not present, however, merely because the parties do not agree on its proper construction. . . . Instead, the true test is not what the parties to contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." (Internal quotation marks omitted.) Id., 565.
The relevant provisions of the Management Agreement provide as follows. Paragraph 2, entitled "Definitions," provides that a "Premises" is to defined as "[t]he land, structures and improvements, (real property, real estate and all rights thereof) at one or all of the locations listed on Exhibit A." (Management Agreement ¶ 2.) Conversely, a "Site" is defined as "[a]ny parcel of real property owned by Shell Oil Company (as listed in Schedule B) that is deemed to be suitable by the Owner [Shell] and the Manager [Message Center] for the placement of radio communications equipment." (Management Agreement ¶ 2.) Thus, under the plain language of the Management Agreement, the terms "Premises" and "Sites" are terms-of-art, and must be accorded independent significance and meaning.
With regard to the operative paragraphs of the Management Agreement, paragraph 15a provides as follows: "The commencement of this Agreement is as of the date of execution. This Agreement shall remain in effect for five (5) years from the date of execution, and shall be extended on a year to year basis unless either party furnishes notice to the other within 180 days of the CT Page 1591 expiration of the five (5) year term or any one year extension thereafter." (Management Agreement ¶ 15a.)
A plain reading of the second sentence of paragraph 15a of the Management Agreement indicates that the agreement was to continue for a minimum, set period of five years from the date of execution. The parties inclusion of the word "shall," in light of the overall intent of the contract, as well as the fact that the five-year opening proviso is set off by a comma from the rest of the sentence supports this conclusion. See Town of Monroe v.Renz, 46 Conn. App. 5, 14, 698 A.2d 328 (1997). It is also apparent from the plain language of the sentence that the parties intended for the Management Agreement to continue on a year-to-year basis after the original five year period had expired, unless: (1) either party furnished notice of termination to the other party within 180 days of the expiration of the original five year period; or (2) either party furnished the other party notice of termination within 180 days of the expiration of any one of the one year extensions beyond the original five year period.
Amended paragraph 15b of the Management Agreement, however, provides in relevant part: "[Shell] shall also have the right to terminate this Agreement, with respect to any one or more Sites, on a Site-by-Site basis, upon 180 days prior written notice to [Message Center]." (Addendum to Management Agreement ¶ 15b.) Thus, this paragraph appears to conflict with the plain language of the opening proviso in the second sentence of paragraph 15a. Paragraph 15b seems to provide the defendant with a method of terminating the Management Agreement, with respect to specific "Sites," on an individual basis. Presumably, therefore, the defendant could terminate the entire Management Agreement with respect to all of the Sites listed in the agreement, on a Site-by-Site basis, which then would have the practical effect of terminating the entire Management Agreement itself. Yet, such an action would flatly contradict the language provided for in paragraph 15a, and render that paragraph meaningless and mere surplusage.
Alternatively, paragraph 15b allows Shell to terminate Sites on a "Site-by-Site" basis only; paragraph 15b does not, however, provide any mechanism whereby Shell may terminate the Management Agreement with respect to Premises. Thus, it is unclear whether the termination of every Site as listed on Exhibit A would operate to terminate the entire Management Agreement itself, or CT Page 1592 because agreement does not provide the defendant a mechanism to terminate Premises as defined in the agreement, the Management Agreement would still be in place.
Indeed, the confusion within the Management Agreement is compounded, and not clarified, by the parties' conflicting understandings and intentions regarding the agreement. In her affidavit, Maria Scottie, the president of Message Center and the individual who negotiated the Management Agreement with the defendant, states: "The [Management Agreement] appointed [Message Center] for a term of five years as Shell's exclusive communications managing agent for the Premises and Sites with respect to overseeing License Agreements." Scottie Aff'd, p. 2.) She further states that because of the enormous start-up costs and efforts needed, Message Center "would neither agree to a term of less than five years nor a non-exclusive arrangement. The final, executed version of the [Management Agreement] reflected these contractual necessities." (Scottie Aff'd, p. 3.) Scottie also maintains that "contrary to the claims by Shell . . . paragraph 15b did not constitute a second manner by which the [Management Agreement] could terminate (in addition to expiration of the five year term)-instead, it constituted a method by which the [Management Agreement] could be terminated with respect to one or more particular Sites for certain Site-specific reasons. . . ." (Scottie Aff'd, p. 5.) Thus, Scottie claims, even though the defendant possessed the contractual authority to terminate the Management Agreement with respect to certain Sites, on a Site-by-Site basis, Shell did not possess the contractual authority to terminate the Management Agreement with respect to any Premises prior to the expiration of the original five-year period. (Scottie Aff'd, p. 6.)
Conversely, Shell maintains that it did have the contractual authority to terminate the entire Management Agreement, prior to the original five year period, under certain conditions. Attorney Brett Marks, one of the individuals who drafted and negotiated the Management Agreement on behalf of the defendant, stated in his deposition that under the appropriate circumstances and with certain consequences, the defendant, pursuant to paragraph 15 of the Management Agreement, could unilaterally terminate the entire Management Agreement without a breach on the part of Message Center prior to the end of the first five-year term. (Marks Dep. P. 101.) Thus, despite the fact that under Delaware law the courtmay interpret the Management Agreement in accordance with the intentions of the parties in spite of the contract's inherent CT Page 1593 ambiguity, that is not possible here because of the contradictory nature of the parties intentions regarding the Management Agreement.
Ultimately, the court cannot interpret the Management Agreement as a matter of law because the language and paragraphs of the agreement itself are open to many reasonable interpretations, and as such, for the court to place a single, definitive meaning on the parties' agreement would be to work a legal fiction. And since the motion before the court is a motion for summary judgment, the court's more appropriate and judicious course of action is to allow the trier of fact to determine what the parties intended with respect to the agreement at trial. Indeed, the court's decision to deny both parties' motions for summary judgment is buttressed by the fact that the parties are diametrically opposed to each others positions with respect to both their intentions and understandings of the Management Agreement.
Therefore, in light of the foregoing, the court finds that summary judgment on behalf of either party would be inappropriate. The court finds there to be at least ambiguity, and possibly internal inconsistency, in the Management Agreement itself and therefore, the court is unable to determine as a matter of law whether the defendant had a right to terminate the entire Management Agreement. Particularly, although Paragraphs 15a and 15b, when read alone, do not appear to raise any significant questions of fact regarding their meaning and effect on the Management Agreement, when the paragraphs are read together, genuine issues of material fact with respect to the Management Agreement and the parties intentions are raised. Furthermore, it is clear from the evidence and documentation before the court that the parties' understandings and intentions with respect to the Management Agreement are in conflict. Therefore, under the present circumstances and Delaware law, summary judgment in favor of either party is not warranted.[3]
Accordingly, the defendant's motion for summary judgment with respect to counts one and four of the amended complaint is denied. Additionally, the plaintiff's cross-motion for summary judgment with respect to the same counts is also denied.
It is so ordered.
DAVID W. SKOLNICK, JUDGE CT Page 1594