[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Jefflee Enterprise, Inc. ("Jefflee") brings the complaint in five counts:
(1) breach of contract
(2) unjust enrichment
(3) damages under the UCC 42-2-1 et seq.
(4) fraud
(5) damages under the CUTPA
The defendant Crimestoppers Security Products, Inc. ("Crimestoppers") filed an answer, a special defense and a cross complaint. CT Page 15412
The plaintiff denied the special defense.
The plaintiff and the defendant started doing business in 1993. The plaintiff sells and installs car alarms, car phones, portable phones, car radios, C.D. players, amplifiers and car videos. The defendant manufactures and sells car alarms.
The defendant was so impressed that it installed the plaintiff as the "dealer of the year" at the road show in March of 1994. Thereafter, an order was delivered which allegedly contained inferior material. At another road show, the president of the plaintiff allegedly complained to the president. Meanwhile, Jefflee was undergoing a decline in business. Jefflee owed Crimestoppers $14,000 on account.
The records showed that Jefflee bought $10,000 in 1993, $70,000 in 1994 and $7,000 in 1995. In February of 1995, Crimestoppers cut the usual customer relationship and henceforth would only repair or replace on a service basis.
The final accounting showed that Jefflee had purchased 900 auto alarms, including 80 alleged defective alarms. The alarms were claimed to have been defective, but all were provided to be workable. The final account showed that, by including the 80 alarms, the amount was $177.49 owed by Jefflee.
As a "coup de grace", Crimestoppers sent a letter to Jefflee under date of July 15, 1997, pointing out they terminated business since February 1995. (Plaintiffs Exhibit C).
This writ followed.
The first count sounds in breach of contract. In paragraph 3 of said count, reference is made to two invoices.
The memos turned out to be credit memos not "invoices". The attorney for the plaintiff objected to having the credit memos as being attached to the file. Conversely, the defense attorney offered the credit memos. Neither witness for the plaintiff could identify the credit memos.
The count also states the goods were defective. Nothing in either credit memo made any reference to the model RS940 or RS440, the only models sold by the defendant to the plaintiff. CT Page 15413
"An appellant cannot have relief when the action of the court was induced by him." Maltie, Conn. App. Proc. 2nd Ed. Sec. 40;Jenner v. Brooks, 77 Conn. 384, 388; Vernancacia v. Barzda, 5 Conn Cir. Ct. 209, 213.
The First Count is dismissed.
In the Second Count, the plaintiff alleges unjust enrichment. In February of 1995, the defendant ceased doing business with the plaintiff for failure on the part of the plaintiff to pay its account. In July of 1995, an accounting shows that the plaintiff owed the defendant the sum of $177.49, when the 80 alarms were credited. The plaintiff sent a letter to the defendant on March 13, 1996, offering to "clean our small balance." A letter dated July 15, 1997 clearly points out that the defendant had terminated their dealings in February 1995.
 "It is axiomatic that, regardless of a party's actual intent, if he conducts himself so as to lead the other party reasonably to conclude that he is accepting an offer to contract, acceptance has taken place as a matter of law. . . . Whether a party has conducted himself so as to lead the other party reasonably to infer acceptance is a question of fact for the trial court."
John J. Brennan Construction Corporation, Inc. v. Shelton,et al, 187 Conn. 695, 709.
 "[S]ilence may constitute acceptance of an offer if the offeree, by his words or conduct, leads the offeror reasonably to interpret that silence as such. . . . Whether such conduct took place so as to create a contract is a question of fact."
Sandella v. Dick Corp. 53 Conn. App. 213, 220.
 "A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. . . . It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations."
Sandella v. Dick Corp. , p. 220. CT Page 15414
It was clear that the defendant renunciated the contract by February 1995.
 "Reununciation of an executory promise requires two things: On the part of the promisor a clear indication of a repudiation of his obligation under the contract, and on the part of the promisee an acceptance of that renunciation. The contract remains a subsisting one until the parties have mutually elected to treat it otherwise, and have given unmistakable evidence of such election. Wells v. Hartford Manilla Co., 76 Conn. 27, 35, 55 A. 599; Home Pattern Co. v. Mertz Co., 86 Conn. 494, 501, 86 A. 19. The renunciation by a party to a contract of its obligation and its adoption by the other party is a voluntary transaction which radically alters their respective rights as to each other, by making immediately due to the promisee damages for that reununciation, instead of leaving unaffected until the time set for performance the opportunity of the promisor to perform his obligation or to pay the damages then due."
Yaffe v. Glens Falls Indemnity Co., 115 Conn. 375, 378.
The Third Count alleges an action under the Uniform Commercial Code. Specifically, the plaintiff alleges violations of Part 2, "Form, Formation and Readjustment of Contract."
Paragraphs 3 and 4 are re-pled as paragraphs 3 and 4 under the First Count. Paragraphs 3 and 4 were ruled as being insufficient for the reasons set forth.
Paragraphs 7, 8, 9 and 10 are found to be insufficient. Furthermore, this remedy provides in subsection (4) of Section42a-2-316:
 "(4) Remedies for breach of warranty can be limited in accordance with the provisions of section 42a-2-718 on liquidation or limitation of damages and section 42a-2-719 on contractual modification of remedy."
See § 42a-2-607; § 42a-2-703; § 42a-2-709; § 42a-711.
 "Because the contract between the parties was a contract for the sale of goods, the law governing this transaction is to CT Page 15415 be found in article 2 of Uniform Commercial Code. General Statutes § 42a-2-102. Under article 2, the rights and liabilities of the parties are determined, at least in part, by the extent to which the contract has been executed. The buyer's acceptance of goods, despite their alleged nonconformity, is a watershed. After acceptance, the buyer must pay for the goods at the contract rate; General Statutes § 42a-2-607(1); and bears the burden of establishing their nonconformity. General Statutes § 42a-7-607(4). Acceptance, even with knowledge of the nonconformity of the goods, does not, however, constitute an election to waive all claims with respect to the accepted goods. General Statutes § 42a-2-607(2). The buyer who elects to keep nonconforming goods has a remedy in damages; § 42a-2-714; provided that he has given timely notice of breach to the seller; § 42a-2-607(3)(a); and he may exercise that remedy by deducting all or any part of his claimed damages from any part of the unpaid contract price otherwise due to the seller under the same contract. General Statutes § 42a-2-717; See White Summers, Uniform Commercial Code (2d Ed. 1980) § 8-2."
Stelco Industries, Inc. v. Cohen, 182 Conn. 561, 563, 564.
The foregoing case is concerned with warranties, as in Count 3. The plaintiff was concerned with 72 car alarms, which it said was alleged. The problem in the case in hand is there is nothing but the boxes, and nothing else. Accord: Plateq Corporation v.Machlett Laboratories, Inc., 189 Conn. 433, 443; Sun HillIndustries, Inc. v. Kraftman Group, Inc., 27 Conn. App. 688, 694.
Part 6, "Breach, Reformation, and Excuse", and Part 7, "Remedies", describe the remedies for the parties. The plaintiff is not entitled to any remedy thereunder. Conversely, the defendant prudently pursued the remedy of an accounting which showed a balance of $177.49 in its favor. For all that appears, the boxes were figments of the imagination of the plaintiff's witnesses. The plaintiff produced no evidence. Sec. 42a-2-607(4).
 "To assume is to fool one's self." The Quotable Lawyer, Shrager et al., § 53.3.
 "The trial court was justified in assigning to each party the burden of proving the facts affirmatively asserted in his pleadings. `The credibility of witnesses and the weight to be accorded their testimony are within the province CT Page 15416 of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible.'"
Suarez-Nigreta v. Trotta, 49 Conn. App. 517, 520.
The Fourth Count and Fifth Count are supported by insufficient evidence.
As to the five counts of the complaint, the court finds that each count is found to be supported by insufficient evidence and the complaint is dismissed. The special defense is found to be true. The cross complaint is still valid for the sum of $177.49.
Burns, J.T.R.