EDWARD J. PARZYCH ET AL. *v.* TOWN OF BRANFORD ET AL.

SUPERIOR COURT　　　NEW HAVEN COUNTY　　　FILE NO. 83277

Memorandum filed September 25, 1957.

*James W. Curran,* of New Haven, for the plaintiffs.

*Watrous & Spencer,* of New Haven, for the defendant administrator.

FITZGERALD, J. The actual plaintiffs in this case are Edward J. Parzych and Charles F. Lewis, Jr., who because of their minority sue through their fathers as natural guardians and next friends. At the commencement of suit the named defendants were the town of Branford in its governmental capacity and Donald Holabird as administrator upon the estate of Phinneas McLean Talcott, late of Branford. Subsequently the suit was withdrawn as against the town of Branford under a covenant upon payment of the sum of $750 to each of the plaintiffs. See amended pleadings.

Hence at the trial the issues were confined to the disputed allegations recited in the joint complaint of the plaintiffs against the remaining defendant administrator, and the latter's special defenses of contributory negligence and voluntary assumption of risk on the part of the plaintiffs. Reference hereafter to the defendant is to be understood as relating to the defendant administrator, the remaining defendant in the case as tried. As against this defendant the joint complaint is comprised of two counts, the first sounding in negligence and the second in the maintenance and continuance of a nuisance.

The following facts are either not disputed or find support in the evidence as a whole: On December 18, 1955, the defendant's decedent was found dead in a cottage or shack which he had owned and occupied alone in Branford. The structure is located on an isolated tract of land to which access could be had over a right of way extending a quarter of a mile in length from United States route 1 in that town. On December 21, 1955, the defendant qualified as temporary administrator and a week later a permanent administrator upon the estate of the decedent. When the decedent was found dead there were various items of personal property in the cottage, including cartridges and cans filled with gunpowder. At least some of the cartridges were removed from the cottage by a police officer of Branford. Thereafter boys in the neighborhood persistently entered the cottage as trespassers and, as disclosed by photographs placed in evidence, reduced the interior to shambles. Many of these depredations were carried out after the defendant qualified as administrator and were known to him.

On Saturday afternoon of March 3, 1956, the two plaintiffs without invitation entered the cottage. One had done so on a previous occasion. Their purpose in doing so on the day in question was to look about and see if there was anything in the cottage worth taking. They found several cans which contained a powdered substance and suspected that the substance was gunpowder. In this suspicion they were correct. One or two cans were removed by them and the contents poured on top of a stone wall out in the yard. An applied match proved to them that the gunpowder was inflammable. The plaintiffs then returned to the cottage and removed several other cans containing a similar substance and left the premises to go to a quarry in the neighborhood to perform an experiment of greater magnitude. On

the way to the quarry they met another boy to whom they disclosed their intention. He advised them not to carry out the project because of its hazards. This advice was not heeded. Upon reaching the quarry the further experimentation was executed. Without detailing the procedure adopted, it is sufficient to say that the plaintiffs produced an explosion which caused them serious personal injuries.

At the time the plaintiffs were fifteen years of age and in the eighth grade of grammar school. They knew that they were trespassers when they entered the cottage and that they had no right to take away any item of personal property therefrom. As already pointed out, the plaintiffs knew that the contents of the cans comprised gunpowder before the experiment which resulted in an explosion, and knew that an applied match would produce an ignition.

Notwithstanding the testimony of the defendant to the contrary, it can be readily found that he knew or should have known when he became administrator that there were several cans in the cottage which contained gunpowder, and did little or nothing about it. So also he had actual knowledge of the fact that after he had qualified as administrator, and for several weeks prior to March 3, 1956, the cottage was the subject of trespass and exploitation by boys in the neighborhood.

Admittedly the defendant administrator in his representative capacity stands in the same position as would his decedent in the latter's lifetime. Broadly stated, in Connecticut a landowner is not liable to a trespasser for failure to use care to safeguard him from injury due to conditions on the land. However, when the presence of a trespasser becomes known, a duty to use ordinary care to avoid injury then arises. See *McPheters* v. *Loomis,* 125 Conn. 526, 531, and cases cited.

In the case at bar the plaintiffs were minors of the age of fifteen years. As to child trespassers the Connecticut rule is stated thus in *Wolfe* v. *Rehbein,* 123 Conn. 110, 113: "When, however, the owner knows or should know that children are likely to trespass upon a part of his land upon which he maintains a condition which is likely to be dangerous to them he may be held liable for harm resulting to them therefrom."

Aside from the fact that boys of fifteen are not precisely in the category of children of tender age, a text writer has said that "it would appear that until the age of majority (twenty-one years in Connecticut), each child is to be gauged on a sliding scale, partly on an objective basis and partly on a subjective basis." Wright, Connecticut Law of Torts, p. 106.

The recital of facts discloses that the harm resulting to the plaintiffs came about after they had committed acts of trespass and petty larceny for which they could have been subjected to public prosecution. Had the explosion occurred by their use of a match in exploring a closed cottage which was dim (having in mind that the defendant knew or should have known of the presence of gunpowder and actually knew that trespassers were prone to enter the cottage), a different situation might be presented. Here the gunpowder was removed from the cottage to a quarry for further experimentation when the plaintiffs already had acquired knowledge of its inflammable propensities.

Liability does not attach to the defendant. Sole proximate cause attributed to the defendant cannot be found. And this is manifestly so after considering the evidence in its entirety.

Parenthetically, it would seem that a recovery in this case could only be had against the defendant,

if at all, on the count in negligence. *McPheters* v. *Loomis,* supra, 534; *Webel* v. *Yale University,* 125 Conn. 515, 525; *Botticelli* v. *Winters,* 125 Conn. 537, 540. But assuming without conceding the existence of an ultrahazardous condition in the cottage sufficient to alter the rule, the defendant's special defense of voluntary assumption of risk would preclude a recovery in favor of the plaintiffs in any event. *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 341, 342, and cases cited; Wright, op. cit., p. 179. That the plaintiffs were guilty of contributory negligence in material respects is beyond question. The same applies to the voluntary assumption of risk if this principle as a defense requires application.

The over-all conclusion reached is that the plaintiffs are not entitled to a recovery of damages from the defendant administrator. The essential elements in the case as pleaded and tried have presented questions of fact for the consideration of the court, and as such they are resolved against the plaintiffs.

Let judgment enter for the defendant administrator on both counts of the joint complaint.