[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case arises out of a tragic incident in which the plaintiff's decedent, Thomas Napierski, was killed while riding his bicycle on property owned and operated by the defendant, the State of Connecticut. The plaintiff, John Napierski, the father and administrator of the estate of Thomas Napierski, brought this action on behalf of the estate of his son, following a complex myriad of events[1]. Before this court, now, is the Defendant's motion for summary judgment.
The defendant moves for summary judgment on two separate grounds. First, the defendant argues that it owed no duty to the plaintiff's decedent, as the decedent was a trespasser. Second, the defendant argues that it did not proximately cause the decedent's death. The defendant maintains that there are no genuine issues of material fact with regard to either of the foregoing grounds for summary judgment, and therefore, it is entitled to judgment as a matter of law.
The plaintiff argues in opposition to the motion for summary judgment that genuine issues of material fact exist with respect to both of the issues that the defendant raises in its motion for summary judgement. Consequently, the plaintiff argues that summary judgment is inappropriate.
I. ISSUES IN DISPUTE
The two issues for this court to resolve are whether the defendant is correct in it assertion that it owed no duty to the plaintiff's decedent who was a minor, aged seventeen years old; and whether there are material facts in dispute as to whether the defendant was the proximate cause of the plaintiff's decedent's injuries and death.
For reasons more fully set forth in this memorandum of decision, this court holds that there are material facts in dispute with regard to both issues which preclude the granting of the defendant's motion for summary judgment.
II. FACTUAL BACKGROUND
On July 19, 1991, just before 7 p. m., Thomas Napierski and a CT Page 8043 friend were riding their bicycles in the Wells Street Parking Garage (hereinafter, "the garage"), which is located on the Central Connecticut State University campus in New Britain, Connecticut. At the time of the incident Thomas Napierski was seventeen years old. While the decedent was traversing down through the garage, he collided head-on with a retaining wall located at the A-D level cross-over. This collision caused the decedent to suffer fatal injuries.
The garage is a complex structure consisting of seven compound-sloped levels. The garage is and was controlled and possessed by the defendant. On the day of the incident, the lights on certain levels were turned off due to some repairs that were being done in the garage. It was unlocked and fully accessible to the public. As of the date of the incident, the defendant had some level of awareness of the fact that youths used the parking garages on the college campus for skateboarding and bicycling. It is undisputed that there were no signs warning non-University persons to stay out of the Garage.
On October 10, 1997, the plaintiff commenced this action against the defendant, alleging one count of negligence. The plaintiff's amended complaint alleges that the defendant's negligence caused the plaintiff's decedent's death. The plaintiff has supported his allegations with the testimony of various experts, including one, Dr. I.U. Ojavo, who testified that the lighting in the garage was insufficient.
III. LEGAL DISCUSSION
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp. , 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). In order to aid the court in deciding a motion for summary judgment, prior to trial, the parties must provide the court with evidentiary facts, or substantial evidence outside of the pleadings from which the material facts alleged in the pleadings can be inferred. Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578-79, CT Page 8044573 A.2d 699 (1990); United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. . . . The test to be applied would be whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabriellev. Hospital of St. Raphael, 33 Conn. App. 378, 382-83,635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . ." Ciarelli v. Romeo, 46 Conn. App. 277, 282,699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 651 (1997) see also Mullen v. Horton, 46 Conn. App. 759, 763, 700 A.2d 1377
(1997) (directed verdict rendered only where, on the evidence viewed in light most favorable to nonmovant, trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed).
A. DUTY
Here, it is an undisputed fact that at the time of the incident the decedent was seventeen years old, and therefore a minor. This court, also, finds that there is no genuine issue of material fact that at the time of the incident, the decedent's legal status was that of a minor trespasser. Consequently, the court must apply the law of trespassing children to the facts of this action to determine whether the defendant is entitled to summary judgment.[2]
The Connecticut Supreme Court has "adopted the view of § 339 of the Restatement (Second) of Torts that [a] possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realized or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk of intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the CT Page 8045 danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." (Internal quotation marks omitted.) Dzenutis v. Dzenutis,200 Conn. 290, 304, 512 A.2d 130 (1986); Duggan v. Esposito,178 Conn. 156, 158, 422 A.2d 287 (1979); 2 Restatement (Second), Torts § 339, p. 197 (1965)
Under this Restatement section, a defendant may incur liability to a trespassing child "only if . . . the [defendant has] actual or constructive notice of trespassing children in the area"; 2 Restatement (Second), supra, § 339; so that the defendant is "bound to exercise that degree of care that a reasonable prudent person would exercise under similar circumstances in dealing with the possibility of a child of the plaintiff's age being on the property." (Internal quotation marks omitted.) Duggan v. Esposito, supra, 178 Conn. 162-63. "When . . . [a] possessor knows or should know that children are in the habit of trespassing on a part of the property on which he maintains a condition that is likely to be dangerous to them, he may be held liable for harm resulting to them therefrom." Greenev. DiFazio, 148 Conn. 419, 422, 171 A.2d 411 (1961); Duggan v.Esposito, supra, 178 Conn. 159.
In the instant case, genuine issues of material fact exist with regard to whether the defendant had either actual or constructive notice of trespassing children in the garage. The exhibits, deposition testimony and affidavits before the court indicate that the defendant was aware that minor trespassers, prior to the incident, had occasionally ridden bicycles and skateboards on the defendant's property. (Def.'s Exhibits E, F, G; Pl.'s Exhibits C, L, I, G). Whether the cumulative number of these occurrences was sufficient to create a duty to the plaintiff's decedent for purposes of this action must be resolved by the trier of fact. "It is . . . for the jury to decide if a defendant knows or has reason to know that children are likely to trespass on that portion of land where the instrumentality is located. . . . Even if there is no evidence that any child had previously trespassed on the site, it remains a jury question whether, based on all the evidence, the defendants knew or had reason to know that children were likely to trespass on the place where the condition existed." (Citations omitted.) Yeske v. AvonOld Farms School, Inc., 1 Conn. App. 195, 201, 470 A.2d 705
(1984) CT Page 8046
Next, the court must address whether the defendant knew or should of known that the garage posed an unreasonable risk of death or serious injury to the trespassing minor. Pursuant to subsection (b) of the 2 Restatement (Second), supra, § 339, a defendant is liable for physical harm to a trespassing child caused by an artificial condition only if, "the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children. . . ." See alsoKrause v. Almor Homes. Inc., 149 Conn. 614, 617, 183 A.2d 273
(1962) (whether condition complained of was one defendant knew or should have known involved an unreasonable risk to trespassing child)
The evidence before the court demonstrates that questions of fact also exist as to whether the defendant knew or should have known that the parking garage posed an unreasonable risk of serious injury or death to trespassing children. Factual disputes between the parties with regard to such issues as lighting, and the proper security of the parking garage, only highlight some of the material factual disputes prevalent in this action.
Moreover, in light of the indefiniteness of the language used in subsection (b), as well as the very nature of the inquiry that is required (e.g., whether a possessor of land "should realize" that an artificial condition poses an "unreasonable risk" to a trespassing child), it would be inappropriate for this court to make a ruling as a matter of law upon what would amount to a discretionary determination. Indeed, the type of inquiry that is required under subsection (b) falls precisely within the province of the trier of fact. "It is a question for the jury to decide if a defendant is maintaining a latently dangerous [condition] on his premises which is so exposed that he may reasonably anticipate that a child is likely to be hurt by it." Yeske v.Avon Old Farms School, Inc., supra, 1 Conn. App. 201.
Finally, the court must address whether the decedent, because of his age, did not appreciate the risks associated with riding his bicycle in the garage. Subsection (c) of the 2 Restatement (Second), supra, § 339 provides that a possessor of land is subject to liability for trespassing children only if "the children because of their youth do not discover the condition and realize the risk involved in intermeddling with it or in coming within the area made dangerous by it. . . ." The comment to subsection (c) states that with respect to this requirement, CT Page 8047 "[t]he purpose of the [landowner's] duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in case of known and appreciated danger." 2 Restatement (Second) supra, § 339, comment on (c) (1965).
The official comment to subsection (c) states "that the rule stated in this Section is not limited to `young' children, or to those `of tender years,' so long as the child is still too young to appreciate the danger. . ." 2 Restatement (Second), supra, § 339, comment (c) (1965). The comment further states that "[t]he great majority of the courts have rejected any such fixed age limit [for the applicability of the rule], and have held that there is no definite age beyond which the rule stated here does not apply." Id. Additionally, Connecticut has not adopted an age limit beyond which the rule no longer applies, although it appears to be the trend that as the age of the child increases, the probability that a landowner will be held liable decreases. See Parzych v. Branford, 20 Conn. Sup. 377, 136 A.2d 223 (1957);Dougherty v. Graham, 161 Conn. 248, 253, 287 A.2d 382 (1971).
It is true that the plaintiff's decedent, at the age of seventeen, had almost reached the age of majority. However, given the law, this court cannot hold, as a matter of law that this precludes the defendant from owing him a legal, duty. There is no set age limit at which summary judgment becomes mandatory under subsection (c) of § 339. Although there is evidence in record which suggests that perhaps the decedent should have been aware of the risks involved with riding a bicycle inside a parking garage, the court declines to resolve the issue of the decedent's mental state as a matter of law. In this action, whether the plaintiff's decedent was fatally injured as a result of his own folly, or whether he suffered his injuries because he failed to fully appreciate the risks associated with his conduct should not be determined in a motion for summary judgment. Both parties have offered evidence on the issue of the decedent's maturity and experience, but a conclusive determination as to whether the decedent fully appreciated the precariousness of riding a bicycle within a parking garage remains in question. This is certainly a crucial aspect of this action, and the answer to the inquiry properly rests with the trier of fact, not this court.
For the foregoing reasons, genuine issues of material fact exist as to whether the defendant owed the plaintiff's decedent a duty of care, and as such, the defendant's motion for summary CT Page 8048 judgment based upon this ground must be denied.[3]
B. PROXIMATE CAUSE
The defendant's second argument is that even if it did owe a duty to the plaintiff's decedent, any breach of that duty was not the proximate cause of the decedent's fatal injuries. "An essential element of any negligence action is the establishment of the defendant's conduct as a proximate cause of the plaintiff's injury." Wu v. Fairfield, 204 Conn. 435, 438,528 A.2d 364 (1987). "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct `legally caused' the injuries." Doe v. Manheimer, 212 Conn. 748, 757, 563 A.2d 699
(1989). "Legal cause is a hybrid construct, the result of balancing philosophical, pragmatic and moral approaches to causation." Kowal v. Hofher, 181 Conn. 355, 359, 436 A.2d 1
(1980). "The first component of `legal cause' is `causation in fact.'" Doe v. Manheimer, supra, 212 Conn. 757. "`Causation in fact' is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." Id.
"The second component of `legal cause' is proximate cause, which we have defined as `an actual cause that is a substantial factor in the resulting harm. . . .' The `proximate cause' requirement tempers the expansive view of causation [in fact] by the pragmatic . . . snaping [of] rules which are feasible to administer, and yield a workable degree certainty Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes. . . . In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice" (Citations omitted; internal quotation marks omitted.)Doe v. Manheimer, supra, 212 Conn. 757-58.
The Connecticut Supreme Court has often "stated that the test of proximate cause is whether the defendant's conduct is a substantial factor in producing the plaintiff's injury." (Internal quotation marks omitted.) Id., 758; Purzvcki v.Fairfield, 244 Conn. 101, 113, 708 A.2d 937 (1998). "The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, `whether CT Page 8049 the harm which occurred was of the same general nature of the foreseeable risk created by the defendant's negligence.' ". . . In applying this test, we look from the injury to the negligent . . . act complained of for the necessary causal connection." (Citations omitted; internal quotation marks omitted.) Id.
The defendant argues that the alleged negligence could not, as a matter of law, be reasonably interpreted to be the proximate cause of the decedent's injuries. Specifically, the defendant argues that it was entirely unforeseeable that the decedent would ride his bicycle at such a high rate of speed within the garage; and as such, the defendant's alleged negligence, as matter of law, was not a substantial factor in causing the decedent's injuries. Essentially, the defendant maintains that the decedent, by virtue of his own recklessness, caused his own death.
It is well established in Connecticut that "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) Fogarty v. Rashaw,193 Conn. 442, 446, 476 A.2d 582 (1984). "Proximate cause becomes a question of law only when the mind of a fair and reasonable person could reach only one conclusion . . . The question should be submitted to the trier of fact if there is room for a reasonable disagreement. . . ." (Citation omitted; internal quotation marks omitted.) Battistoni v. Weatherking Products,Inc., 41 Conn. App. 555, 563, 676 A.2d 890 (1996); Michaud v.Gurney, 168 Conn. 431, 434, 362 A.2d 857 (1975)
There is a critical question regarding this issue, in this case. It is fairly debatable whether on the day of the incident the defendant should have increased its security measures around and within the garage because the lights on the lower level of the parking garage were turned off for maintenance reasons. Thus, the plaintiff has presented sufficient factual evidence to raise a question of fact as to whether the defendant's alleged negligence proximately caused the decedent's injuries. When the evidence before the court is viewed in a manner most favorable to the plaintiff as the nonmoving party, the defendant's motion for summary judgment must be denied.
IV CONCLUSION
Although the defendant has claimed that there are no material facts in dispute, a review of the arguments of both parties CT Page 8050 reveals that there are a plethora of opposing factual contentions. For this reason, the defendant's motion for summary judgment is denied.
ANGELA CAROL ROBINSON JUDGE, SUPERIOR COURT