IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0460
════════════
 
The State of Texas and the 
Texas Parks and Wildlife Department, Petitioners,
 
v.
 
Ricky Shumake and Sandra 
Shumake, Individually and as Personal Representative of the Estate of Kayla 
Shumake, Deceased, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 12, 
2005
 
 
Justice Medina delivered the opinion of 
the Court, in which Chief Justice 
Jefferson, Justice Hecht, Justice O’Neill, Justice Green, and Justice Johnson joined.
 
Justice Wainwright filed a 
concurrence.
 
Justice Brister filed a dissent.
 
Justice Willet did not participate.
 
In this case 
we consider the effect of the recreational use statute on a premises liability 
claim against the state. Tex. Civ. Prac. 
& Rem. Code §§ 75.001-.004. The Tort Claims Act waives the state’s 
sovereign immunity for premises defects or injuries caused by “a condition or 
use of . . . real property.” Tex. Civ. 
Prac. & Rem. Code § 101.021. The State contends here, however, that 
the recreational use statute effectively reinstates immunity for premises 
liability claims arising on state-owned recreational properties. We disagree. 
While the recreational use statute raises the burden of proof by classifying the 
recreational user of state-owned property as a trespasser and requiring proof of 
gross negligence, malicious intent, or bad faith, it does not reinstate 
sovereign immunity but rather immunizes the state only to the extent of the 
elevated standard. Although we do not agree in all respects with the court of 
appeals’ opinion, we agree with its judgment and accordingly affirm. 131 S.W.3d 
66. 
I
Blanco State 
Park is a picnic, camping, and recreation area owned by the State of Texas and 
operated by the Texas Parks and Wildlife Department. During a family visit to 
the park, the Shumake’s nine-year-old daughter, Kayla, drowned while swimming 
and tubing in the Blanco River. Kayla was allegedly sucked underwater by a 
powerful undertow and trapped in a man-made culvert that diverted the water 
under a nearby park road. 
The Shumakes 
later learned that only days before Kayla’s death three other park patrons had 
encountered the same undertow and nearly drowned due to the same conditions. 
These events were communicated to both a Parks Department employee and to the 
Austin office of the Parks Department.
The Shumakes 
sued the State of Texas, claiming, among other things, that the wrongful death 
of their daughter was caused by a special or premises defect. They asserted that 
when the river’s waters were high, the culvert was concealed, creating an 
dangerous undertow. They further alleged that the Parks Department was aware of 
this dangerous situation, having received reports of other recent near-drownings 
involving the same area, but failed to make the culvert safer or warn of the 
danger. The Shumakes finally alleged that the Parks Department’s failure to act 
involved an extreme degree of risk, considering the probability and magnitude of 
the potential harm to swimmers and thus had breached even the modest duty of 
care owed to them as trespassers under the recreational use statute.
The Parks 
Department filed a plea to the jurisdiction, seeking dismissal of the Shumakes’ 
claims for lack of subject matter jurisdiction, urging, among other things, that 
the recreational use statute barred their premises defect claims by eliminating 
the waiver of governmental immunity provided by the Tort Claims Act for such 
claims. See Tex. Civ. Prac. & 
Rem. Code §§ 75.001-.004. The trial court denied the plea,[1] and the Parks Department 
took an interlocutory appeal. See Tex. Civ. Prac. & Rem. Code § 
51.014(a)(8).
The court of 
appeals affirmed the trial court’s denial of the plea to the jurisdiction,[2] concluding that the 
Shumakes had adequately pled a premises liability claim against the state within 
the Tort Claims Act’s waiver and that the recreational use statute, although 
reducing the duty of care, did not otherwise affect that waiver. 131 S.W.3d at 
73-81. The Parks Department now urges this Court to take jurisdiction of the 
interlocutory appeal because of a conflict of decisions among the courts of 
appeals concerning application of the recreational use statute.
II
Before 
reaching the merits, we must consider the issue of our own jurisdiction. 
Generally, a court of appeals’ decision in an interlocutory appeal is final. 
Tex. Gov’t Code § 22.225(b)(3). 
When, however, a justice in the court of appeals dissents on a question of law 
material to the decision in the interlocutory appeal, or when a prior decision 
of another court of appeals conflicts with the court’s decision in the 
interlocutory appeal, we have jurisdiction to resolve the disagreement or 
conflict. Tex. Gov’t Code §§ 
22.001(a)(1), (2) and 22.225(c). 
The court of 
appeals’ decision in this case conflicts with those of four other courts of 
appeals which have held that the recreational use statute does not permit a 
premises defect claim against the state. See City of Fort Worth v. 
Crockett, 142 S.W.3d 550 (Tex. App.—Fort Worth 2004, pet. denied); Gray 
v. City of Galveston, 2003 WL 22908145 (Tex. App.—Houston [14th Dist.] Dec. 
11, 2003, no pet.) (memo op.); City of Lubbock v. Rule, 68 S.W.3d 853 
(Tex. App.—Amarillo 2002, no pet.); Flye v. City of Waco, 50 S.W.3d 645 
(Tex. App.—Waco 2001, no pet.). Three other courts of appeals have concluded, as 
did the court of appeals in this case, that such claims are available under the 
statute. West v. City of Crandall, 139 S.W.3d 784 (Tex. App.—Dallas 2004, 
no pet.); Tex. Parks & Wildlife Dep’t v. Morris, 129 S.W.3d 804 (Tex. 
App.—Corpus Christi 2004, no pet.); City of Houston v. Cavazos, 811 
S.W.2d 231 (Tex. App.—Houston [14th Dist.] 1991, writ dism’d). We thus have 
jurisdiction to resolve the conflict in this interlocutory appeal. Tex. Gov’t Code § 22.001(a)(2).
III
Generally, 
the State of Texas has sovereign immunity from suit unless waived by the 
Legislature. Gen. Servs. Comm’n v. Little‑Tex Insulation Co., 39 S.W.3d 
591, 594 (Tex. 2001). We have construed that immunity to deprive the courts of 
subject matter jurisdiction over suits against the state or its subdivisions. 
Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 
2004). The Legislature, however, has provided a limited waiver of the state’s 
immunity from suit for certain tort claims under the Texas Tort Claims Act. 
See Tex. Civ. Prac. & Rem. 
Code §§ 101.002, 101.021, 101.025.
The Texas 
Tort Claims Act includes, among other things, a limited waiver of the state’s 
immunity from suits alleging personal injury or death caused by premises 
defects. Id. §§ 101.021(2), 101.022. It further provides that in premises 
defect cases, the state owes the claimant only the duty that a private person 
owes to a licensee on private property.[3] Id. § 101.022 (a). 
When injury or death results on state-owned, recreational land, however, the 
recreational use statute limits the state’s duty even further to that owed by a 
landowner to a trespasser. Id. § 75.002; see also id. §§ 
75.003(g) (“To the extent that this chapter limits the liability of a 
governmental unit under circumstances in which the governmental unit would be 
liable under [the Tort Claims Act], this chapter controls.”), 101.058 
(same).
The Parks 
Department contends that by classifying the entrant and user of state-owned 
recreational property as a trespasser, the Legislature reinstated the immunity 
for premises defect claims waived under the Tort Claims Act. The Department 
reasons that because a landowner generally has no duty to make its property safe 
for trespassers, or to warn them of dangerous conditions, it should follow that 
a trespasser cannot complain about such things. The court of appeals, however, 
disagreed.
The court 
concluded that neither the trespasser standard nor the recreational use statute 
operated to reinstate sovereign immunity for premises defect claims. 131 S.W.3d 
at 80. The court reasoned that a landowner might have a duty to warn of, or make 
safe, an unreasonably dangerous condition on its premises, if it were both aware 
of the condition and the trespassers presence on its property. In so doing, the 
court followed a distinction drawn in the Restatement between known and 
unknown or naked trespassers. 131 S.W.3d at 77-80 (citing Restatement (Second) of Torts §§ 335, 
337).
The 
Department complains that the court of appeals’ reliance on the 
Restatement has created new duties for landowners, not recognized at 
common law nor contemplated by the Legislature when it enacted the recreational 
use statute. The Department submits that the gross negligence standard, 
expressed both in the statute and as part of the limited duty of care owed to a 
trespasser, refers only to contemporaneous activities on the premises, and not 
to the condition of the premises. See, e.g., City of Lubbock, 68 
S.W.3d at 859 (citing Flye, 50 S.W.3d at 648)(duty owed a trespasser 
“does not encompass injury arising from the condition of realty but only injury 
arising from the activity or conduct of the occupier”); see also City of Fort 
Worth, 142 S.W.3d at 554 (expressing disagreement with the court of appeals’ 
reasoning in Shumake).
IV
A negligent 
activity claim requires that the claimant’s injury result from a contemporaneous 
activity itself rather than from a condition created on the premises by the 
activity; whereas a premises defect claim is based on the property itself being 
unsafe. See Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). We 
have rejected attempts to blur the distinction between these two claims. See 
id. (declining “to eliminate all distinction between premises conditions and 
negligent activities”). The Park Department’s argument here, however, does not 
seek so much to blur the distinction between the two as it does to eliminate one 
altogether. Determining whether a “trespasser” on state-owned recreational land 
has a claim for injuries caused by the unsafe condition of the property requires 
that we construe the statute along with the common law principles the statute 
ostensibly incorporates.
A
When 
construing a statute, we begin with its language. Our primary objective is to 
determine the Legislature’s intent which, when possible, we discern from the 
plain meaning of the words chosen. City of San Antonio v. City of Boerne, 
111 S.W.3d 22, 25 (Tex. 2003). If the statute is clear and unambiguous, we must 
apply its words according to their common meaning without resort to rules of 
construction or extrinsic aids. Fitzgerald v. Advanced Spine Fixation Sys., 
Inc., 996 S.W.2d 864, 865-66 (Tex. 1999). We may consider other matters in 
ascertaining legislative intent, including the objective of the law, its 
history, and the consequences of a particular construction. See TEX. 
GOV’T CODE § 311.023(1), (3), (5); Union Bankers Ins. Co. v. Shelton, 889 
S.W.2d 278, 280 (Tex. 1994). Statutory construction is a question of law, and 
our review is accordingly de novo. In re Forlenza, 140 S.W.3d 373, 376 
(Tex. 2004).
The 
recreational use statute limits not only the liability of the state, but also 
the liability of others, who open their land for recreational purposes. Tex. Civ. Prac. & Rem. Code §§ 
75.001-.004.[4] The protection is extended 
to encourage this type of use. The statute limits liability by providing that 
the owner or occupier of real property does not assure that the premises are 
safe for recreational purposes and does not assume responsibility for the 
actions of those admitted to the property. Id. § 75.002(c)(1), (3). The 
statute further creates a legal fiction, classifying the invited recreational 
user of the property as a trespasser, and imposing that limited standard of care 
upon the landowner. Id. § 75.002(c)(2). The statute, however, also 
provides that the recreational user’s status as trespasser “shall not limit the 
liability of an owner, lessee, or occupant of real property who has been grossly 
negligent or has acted with malicious intent or in bad faith.” Id. § 
75.002(d).
On its face, 
section 75.002(d) makes no distinction between injuries caused by activities and 
injuries caused by conditions. The Department argues, however, that even though 
section 75.002(d) does not expressly limit the scope of a gross negligence 
claim, the limitation is nevertheless implicit in the classification of the 
recreational user as a trespasser under section 75.002(c)(2). The Department 
submits that gross negligence must arise, if at all, from contemporaneous 
activities on the property because a trespasser has no right to expect that the 
property is safe or that the owner will warn about any dangerous conditions 
known to it. As a general proposition this is correct, but construing trespasser 
status as an absolute bar to a premises defect claim under the statute requires 
closer examination.
B
A trespasser 
at common law was one who entered upon property of another without any legal 
right or invitation, express or implied. Texas‑Louisiana Power Co. v. 
Webster, 91 S.W.2d 302, 306 (Tex. 1936). At common law, the landowner owed 
no duty but to refrain from injuring the trespasser “willfully, wantonly, or 
through gross negligence.” Tex. Utils. Elec. Co. v. Timmons, 947 S.W.2d 
191, 193 (Tex. 1997); Burton Constr. & Shipbuilding Co. v. Broussard, 
273 S.W.2d 598, 603 (Tex. 1954). The rule is based on the principle that a 
landowner has no obligation to protect a trespasser in the wrongful use of the 
landowner’s property: trespassers, who come uninvited for purposes of their own 
“must take the premises as they find them; and if they fall into an unsuspected 
danger, the loss is their own.” Tex. Cities Gas Co. v. Dickens, 168 
S.W.2d 208, 210 (Tex. 1943). Thus, as a general proposition, a landowner is 
entitled to the exclusive use of his property and “is not liable for injury to 
trespassers caused by his failure to exercise reasonable care to put his land in 
a safe condition for them, or to carry on his activities in a manner which does 
not endanger them.” W. Page Keeton et 
al., Prosser and Keeton on the 
Law of Torts § 58 at 393-94 (5th ed. 1984). 
       This rule is grounded in the common law’s 
traditional regard for the rights of private ownership of property and the 
assumption that landowners normally have no reason to expect trespassers or know 
about them, and thus no liability for creating a dangerous condition on their 
own property. Id. at 395. This general proposition is subject to a number 
of qualifications, however. See id. at 395-99 (“Once the foregoing 
general rule of nonliability has been stated, the rest of the law of trespassers 
is a list of exceptions to it.”).
A number of 
jurisdictions, motivated by more pressing considerations for human safety, have 
balanced such considerations against the traditional rule favoring property 
rights. As one authority has observed, if the landowner’s “burden is very 
slight, and if the risk of harm to trespassers is correspondingly very great, 
there may be good reason to hold the defendant liable.” Id. at 395. Under 
this exception to the general rule, a landowner, who has actual knowledge that a 
trespasser is coming and will encounter a known dangerous condition created by 
the landowner, may owe a duty to warn or take some other action for the 
trespasser’s protection.[5] This is also the 
Restatement’s position, adopted here by the court of appeals. 131 S.W.3d 
at 77-78.
The Parks 
Department argues, however, that before this case Texas law had not recognized 
such a distinction, and thus the principle could not have been contemplated by 
the Legislature when it enacted this statute. But whether Texas common law has, 
or should, distinguish between different types of trespassers does not control 
our decision in this statutory construction case. Neither this distinction nor 
any other disagreement about the common law’s treatment of trespassers is 
controlling here because the Legislature did not purport to adopt these common 
law principles as its liability standard in section 75.002(d). In fact, it 
intended something else entirely. 
Section 
75.002(d) quite plainly provides that the classification of a recreational user 
as a trespasser was not intended to “limit the liability of [a landowner] who 
has been grossly negligent or has acted with malicious intent or in bad faith.” 
Tex. Civ. Prac. & Rem. Code § 
75.002(d). Had the Legislature merely intended to adopt the trespasser standard, 
this limitation would not have been necessary. The standard of section 75.002(d) 
and the trespasser standard are therefore not the same.
This is 
immediately apparent when the language of subsection (d) is compared to that 
consistently used by Texas courts to describe the common law duty of care owed 
to trespassers: to refrain from injuring the trespasser “willfully, wantonly or 
through gross negligence. Tex. Dept. of Parks & Wildlife, 133 S.W.3d 
at 225; City of Bellmead v. Torres, 89 S.W.3d 611, 613 (Tex. 2002); 
Tex. Util. Elec. Co., 947 S.W.2d at 193; Burton Constr. & 
Shipbuilding Co., 273 S.W.2d at 603. While the statute and the common law 
both share a gross negligence component, construing them to mean the same thing 
in each context would render subsection (d)’s reference to gross negligence 
redundant. In construing a statute, we give effect to all its words and, if 
possible, do not treat any statutory language as mere surplusage. Cont’l Cas. 
Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 402 (Tex. 2000). 
Thus, the Department’s argument concerning the limitations inherent in gross 
negligence under the trespasser standard, subsection (c) of the statute, does 
not inform our understanding of subsection (d).
The 
recreational use statute does not define gross negligence; it merely provides 
that trespasser status shall not limit the liability of a landowner “who has 
been grossly negligent.” Tex. Civ. Prac. 
& Rem. Code § 75.002(d). This language does not suggest that the 
Legislature was only concerned about a landowner’s contemporaneous and active 
conduct as the Department has argued. Nothing in the language indicates that the 
Legislature intended that gross negligence should have such a special or limited 
meaning. Because it is not defined otherwise, we conclude that the Legislature 
must have intended for gross negligence to have its commonly-accepted legal 
meaning.
Both this 
Court and the Texas Legislature have defined gross negligence as an act or 
omission involving subjective awareness of an extreme degree of risk, indicating 
conscious indifference to the rights, safety, or welfare of others. Transp. 
Ins. Co. v. Moriel, 879 S.W.2d 10, 21 (Tex. 1994); Missouri Pac. Ry. Co. 
v. Shuford, 10 S.W. 408, 411 (Tex. 1888); Tex. Civ. Prac. & Rem. Code § 
41.001(11). And we have previously applied this definition to the recreational 
use statute. See Miranda, 133 S.W.3d at 225 (governmental unit waives 
sovereign immunity under statute only if it is grossly negligent). Because gross 
negligence may result from acts or omissions, and section 75.002(d) does not 
distinguish between injuries caused by conditions and activities, we conclude 
that section 75.002(d) permits a premises defect claim for gross negligence.
V
Recreational 
use statutes have been enacted in nearly every state and uniformly provide that 
landowners do not extend to recreational users any assurance that the property 
is safe, nor confer upon the recreational user the legal status of an invitee or 
licensee to whom an ordinary duty of care is owed. See 62 Am. Jur.2d Premises Liability § 
118 (1990). These statutes, however, also generally retain liability for a 
willful or malicious failure to guard or warn against a dangerous condition, 
use, structure, or activity. Id. at 479. Because these statutes generally 
immunize landowners from liability unless they are guilty of gross negligence, 
willful or malicious conduct, it is important to understand under what 
conditions a failure to guard or warn against a dangerous condition may be 
considered grossly negligent, malicious or willful.
Contrary to 
the Dissent’s suggestion, we do not hold, or even imply, that a landowner may be 
grossly negligent for failing to warn of the inherent dangers of nature. ___ 
S.W.3d at ___ (Brister, J. dissenting) (suggesting that State must now warn that 
“it is dangerous for a nine-year-old child to go tubing in a rushing river 
during high water”). A landowner has no duty to warn or protect trespassers from 
obvious defects or conditions. Thus, the owner may assume that the recreational 
user needs no warning to appreciate the dangers of natural conditions, such as a 
sheer cliff, a rushing river, or even a concealed rattlesnake. But a landowner 
can be liable for gross negligence in creating a condition that a recreational 
user would not reasonably expect to encounter on the property in the course of 
the permitted use. See, e.g., Golding v. Ashley Cen. Irrigation 
Co., 902 P.2d 142, 145 (Utah 1995) (“If [] a landowner has knowledge of an 
uncommon, hidden peril or danger on the land that is not inherent in the use to 
which the land is put and that would not be reasonably discovered or avoided by 
a trespasser, the landowner’s failure to warn or guard against such a danger 
could amount to willful, wanton, or malicious inaction.”); City of Houston v. 
Cavazos, 811 S.W.2d 231 (Tex. App.–Houston [14th Dist.] 1991, writ dism’d) 
(knowledge that numerous people had drowned over a period of years at the same 
artificially created, but hidden, hazard without any action by city to warn or 
remedy the hazard was some evidence of gross negligence); see also Burnett v. 
City of Adrian, 326 N.W.2d 810 (Mich. 1982) (reaching same conclusion under 
Michigan’s recreational use statute); cf. Smither v. Tex. Utilities Elec. 
Co., 824 S.W.2d 693, 696 (Tex. App.–El Paso 1992, writ dism’d) (landowner’s 
use of signs warning of dangerous waters created by company’s discharge canal 
demonstrated conscious concern of landowner “for the safety even of 
trespassers”). Gross negligence requires that the landowner be subjectively 
aware of, and consciously indifferent to, an extreme risk of harm. See 
Tex. Civ. Prac. & Rem. Code 
§ 41.001(11); Louisiana Pacific Corp. v. Andrade, 19 S.W.3d 245, 
246-47 (Tex. 1999) (“what separates ordinary negligence from gross negligence is 
the defendant’s state of mind; in other words, the plaintiff must show that the 
defendant knew about the peril, but his acts or omissions demonstrate that he 
did not care”). This is consistent with our approach in Texas Department of 
Parks and Wildlife v. Miranda that a premises defect claim might be brought 
under the recreational use statute as long as there existed a factual dispute 
regarding the landowner’s gross negligence with respect to the alleged defect. 
133 S.W.3d at 230-31. The recreational use statute limits the state’s liability 
for premises defects, but its effect is not to reinstate the state’s immunity 
from suit.
* 
* *
We conclude 
that the Shumakes’ pleadings were sufficient to state a premises liability claim 
under the recreational use statute. The judgment of the court of appeals is 
accordingly affirmed.
 
____________________________________
David M. 
Medina
Justice
 
Opinion 
delivered:         June 23, 
2006




[1] The trial court denied the plea to the jurisdiction, 
concluding that the Shumakes had adequately alleged a cause of action under the 
Tort Claims Act and that the recreational use statute was unconstitutional as 
applied to them. The trial court further concluded that the Shumakes had 
established a waiver of immunity for their alternative claims of nuisance and 
attractive nuisance.

[2] The court of appeals disagreed with some of the trial 
court’s reasons for denying the plea. The court of appeals concluded that the 
Shumakes had not established the state’s waiver of immunity for claims of 
nuisance and attractive nuisance. 131 S.W.3d at 72-73. The court also concluded 
that the recreational use statute was not unconstitutional as applied to the 
Shumakes. Id. at 81.

[3] This classification does not apply if the claimant pays 
for the use of the premises or in cases of special defects. See Tex. Civ. Prac. & Rem. Code § 
101.022.

[4] The part of the statute relevant to this case 
provides:
 
(c) If an owner, lessee, or occupant of real property 
other than agricultural land gives permission to another to enter the premises 
for recreation, the owner, lessee, or occupant, by giving the permission, does 
not:
 
1) assure that the premises are safe for that 
purpose;
 
2) owe to the person to whom permission is granted a 
greater degree of care than is owed to a trespasser on the premises; 
or
 
3) . . .
 
(d) Subsection . . . (c) shall not limit the liability 
of an owner, lessee, or occupant of real property who has been grossly negligent 
or has acted with malicious intent or in bad faith.
 
Tex. Civ. 
Prac. & Rem. Code § 
75.002(c), (d). 

[5] See, e.g., Copeland v. Pike Liberal Arts, 553 
So.2d 100, 102 (Ala. 1989) (duty owed to trespasser is “not to wantonly or 
intentionally injure him and to warn him of dangers known by [landowner] 
after it was aware of danger to [trespasser]”); Parzych v 
Branford, 136 A.2d 223, 225 (Conn. 1957) (“[I]n Connecticut a landowner is 
not liable to a trespasser for failure to use care to safeguard him from injury 
due to conditions on the land. However, when the presence of a trespasser 
becomes known, a duty to use ordinary care to avoid injury then arises.”); 
Wood v. Camp, 284 So. 2d 691, 693, 694 (Fla. 1973) (“The unwavering rule 
as to a trespasser is that the property owner is under the duty only to avoid 
willful and wanton harm to him and upon discovery of his presence to warn him of 
known dangers not open to ordinary observation.”); Bremer v. Lake Erie & 
W. R. Co., 148 N.E. 862, 864 (Ill. 1925) (“The distinction is clearly made 
that a defendant owes the duty of ordinary care to a trespasser known to be in 
danger, to avoid injuring him. If by the exercise of ordinary care injury can be 
avoided, the defendant is liable for the failure to use such care, but to a 
trespasser, whose presence or whose danger is unknown, there is no duty to 
exercise ordinary care, though there is a duty not to injure him willfully or 
wantonly, or by such gross negligence as evidences willfulness.”); Reasoner v 
Chicago, Rock Island & Pac. R.R. Co., 101 N.W.2d 739, 741 (Iowa 1960) 
(“It is uniformly stated that the owner or holder of the premises owes no duty 
to the unknown trespasser upon his property save that of not injuring him 
willfully or wantonly, and to use such reasonable and ordinary care as the 
circumstances demand, after his presence on the premises and his peril are 
known, to avoid injuring him.”); Louisville & Nashville R.R. Co. v. 
Vanderpool, 496 S.W.2d 349, 351 (Ky. 1973) (“[T]he only duty one owes a 
trespasser (as was Vanderpool) is to exercise ordinary care to avoid injuring 
him after his position of peril is discovered.”); Pridgen v. Boston Housing 
Authority, 308 N.E.2d 467, 474 (Mass. 1974) (“[A]lthough an owner or 
occupier of land owes a trespasser only the duty to refrain from wilful, wanton 
or reckless conduct, where a trespasser is in a position of peril or in a 
helpless situation and his presence becomes known, the owner then has a duty to 
use reasonable care to avoid injuring him, or, as sometimes stated, a duty of 
reasonable care in the circumstances.”); Hanson v. Bailey, 83 N.W. 2d 
252, 257 (Minn. 1957) (Sections 333 and 335 of the Restatement of Torts 
“correctly enunciate the applicable law”); Imre v Riegel Paper Corp., 132 
A.2d 505, 508 (N.J. 1957) (“The standard of duty is the protection of others 
against an unreasonable risk of harm; and the principle is operative in favor of 
trespassers on land if the presence of the particular trespasser be discovered, 
or the possessor of the land be aware of constant trespassing upon a particular 
place or a limited area and the act is likely to cause death or serious bodily 
harm.”); Maple v Tennessee Gas Transmission Co., 201 N.E.2d 299, 300 
(Ohio Ct. App. 1963) (“The duty not to injure a trespasser after he is known to 
be upon the premises is the same duty as is owed in that respect to an 
invitee.”); Lavallee v Pratt, 166 A.2d 195, 198 (Vt. 1960) (“The fact 
that the plaintiff was a trespasser will not excuse the actor from the duty of 
reasonable care for his safety if his presence was known or should reasonably 
have been anticipated.”); Brown v. Carvill, 527 S.E.2d 149, 153-54 (W.Va. 
1998) (“We have held that when a landowner creates a dangerous condition upon 
his property that is likely to cause serious bodily injury or death, and the 
landowner is aware that trespassers intrude into the area where the dangerous 
condition exists, that the landowner must then exercise due care towards the 
trespassers.”).